## William G. Leidy *v.* The Quaker City Cold Storage and Warehouse Company, Appellant.

[Marked to be reported.]

*Bailment—Cold storage warehouse—Negligence—Evidence.*

In an action against the owner of a cold storage warehouse to recover damages for injuries to goods stored, negligence on the part of the defendant cannot be assumed from the mere fact that the goods were injured, but the negligent acts or omissions causing the injury must be affirmatively proved.

In an action against the owner of a cold storage warehouse to recover damages for the loss of chickens and squabs injured by mould and decay, it is not necessary to prove some specific act of negligence which produced the injury, but the case is for the jury where the evidence for the plaintiff tends to show that the chickens and squabs were in good condition when they were placed in the warehouse, that they were mouldy and rotten when taken therefrom, that the room where they were kept was damp and the pipes in it were dripping, that moisture would form mould and mould would cause rot; notwithstanding the fact that the chickens and squabs had been previously stored in another warehouse for a year, and the evidence offered by the defendant tends to show that the temperature of its warehouse was never above 22 degrees; that its machinery was the best of its kind, and never out of order, and that plaintiff's goods were treated the same as all others of a similar kind.

Argued Jan. 19, 1897.   Appeal, No. 452, Jan. T., 1896, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1894, No. 329, on verdict for plaintiff.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass to recover damages for the negligence of defendant, causing injury by mould and decay to plaintiff's chickens and squabs stored in a cold storage warehouse.   Before WILSON, J.

At the trial the contract under which the goods were stored was shown by one of the receipts offered in evidence which was as follows:

## THE QUAKER CITY COLD STORAGE AND WAREHOUSE COMPANY.

### DELAWARE AVENUE, SPRUCE AND WATER STREETS.

*Warehouse Receipt.*

No. 2993.                    PHILADELPHIA, Sept. 13th, 1893.

Received by The Quaker City Cold Storage and Warehouse Company, from W. C. Leidy the merchandise described below, on monthly storage, to be delivered only upon return of this receipt, properly endorsed.

Room 4, Floor C.

Book        Page

Marks, &c.

Lot 14,533.

CHARGES.

Storage per month:
½c. per doz. 1st month.
¼c. per doz. each additional month.
        Insurance:
$690 00.

Description of merchandise:
Twenty (20) Bxs. Dark Squabs, 1876 lbs.
(344 Doz.)
The Quaker City Cold Storage and Warehouse Company shall not be liable for any loss or injury resulting from fire, theft, decay, leakage, wastage, or any accident which may happen to the merchandise above mentioned while in their custody, or from any other cause than the gross negligence of the company or of their agents; nor for any loss from a failure to insure it, unless such insurance be specially directed in writing.
        (Sgd)      L. H. STEPHENS, JR.,
                    *Treasurer and Manager.*
H. HULINGS,
        *Register Clerk*

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

The defendant company had a storage house—a house where the temperature was artificially lowered to a point where it was supposed perishable articles could be kept, and people have been in the habit of sending perishable articles—vegetables, fruit, meat, poultry, and various articles of that kind—to such houses to be kept. It may be a revelation to some of you that such perishable articles are sent to be kept so long before they are put upon the market for sale, as you have learned in this case is sometimes done.

Under the contract involved here, and in the very nature of the case, it cannot be reasonable that the defendant company shall be regarded, in the absence of an express and positive contract, as guarantors that the articles deposited with it shall come out perfectly sound. They do not guarantee against the operation of natural causes. [If either vegetables, or fruit, or meat, or poultry, put in such storage house, notwithstanding they are kept in a sufficiently cold atmosphere, decay, the storage company is not responsible for that. They expressly exclude that ground of liability in their contracts, just as they do leakage, by which I do not mean leakage from pipes, but from receptacles which are put there for storage, containing articles of whatever kind they may be.] [7]

The plaintiff says that these various lots of merchandise which he had were deposited with the defendant in good order; that they were in condition suitable to be deposited in that way; and that, if kept in apartments in which the proper temperature was observed, they could have been brought out again after a lapse of time—such time as the plaintiff claims was the time here—in a good, sound condition, so that they could be put upon the market and sold at the prices which he has indicated.

Now, you will observe that it is very important for you to conclude, in order that the plaintiff may establish that part of his case, that the goods were in such good order. I hardly need say to you, or I ought not to need say to you, that if the injury which subsequently accrued to the squabs and chickens in question here resulted from the condition in which they

were when they were deposited, that the defendant company is not responsible here, and ought not to be held responsible.

The substantial case of the plaintiff, as I understand it, is this : that in room 4, on floor C, of this warehouse, there was such want of attention on the part of the defendant, or the defendant's employees, or in some way such want of care exercised with reference to the stock of the plaintiff which was deposited there, that that room was allowed to become damp. Upon that point you have heard a good deal of evidence, and I do not propose to refer to it at all minutely. You have heard evidence upon both sides—evidence which is well worthy of your careful thought and scrutiny. Witnesses have been called by the plaintiff, who say that they saw the dampness there—dampness on the floor—dampness in the trough, or in the troughs, and some indication on the pipes—I have forgotten exactly how they described it—which would indicate the presence of moisture in the room. It seems to be conceded on both sides that no dampness should have been there ; that if the proper temperature had been maintained dampness would not have been there. Even the defendant's witnesses, as I understand them, concede that if there was dampness—I do not mean the most minute and infinitesimal quantity, for you could not probably get out of any room absolutely at all times all dampness—but if there was any dampness to the extent described by some of the witnesses here, it must have been because the temperature had not been maintained at such a point as the defendant claims it was. As I have said, there is evidence upon both sides of the question, and, as I have already stated to you, it seems to me the plaintiff's cause rests upon what you may determine upon that one point.

If there was a failure on the part of the defendant to do that which it is admitted should have been done—to maintain the temperature in that room not above the freezing point, or not up to such a point as would have permitted moisture to gather there, so that, in point of fact, moisture did gather which infected the packages, and caused mould and other injury to the stuff of the plaintiff that was there deposited—if that was the result of such inattention, or want of attention to a plain and obvious duty, then there was negligence on the part of the defendant, or one or more of the defendant's employees, and to

the extent that that negligence caused injury to the plaintiff's goods, and only to that extent the defendant would be responsible.

The fact that the plaintiff's poultry and squabs were in bad condition at some time it seems to me is quite clear. I do not mean the whole of them, but part of them. There does not seem to be any reasonable ground for doubting that. But, as I have said to you more than once, and I want you to understand it thoroughly, the critical question is, Who was responsible for it? Does it appear here affirmatively? Do you see that in the evidence which leads you to believe that the defendant's want of proper care in doing those things which were done in that line of business, with reference to the plaintiff's relation to them under the contract which was made, caused this injury? If so, it was negligence, and, as I have already said, the defendant is responsible. If you do not find such negligence—if you believe that the injury to the stock which the plaintiff deposited in this warehouse resulted from other causes—from natural causes—from its improper condition at the time it was deposited there, or if you are not able to account for it reasonably satisfactorily to yourself at all, then you would have no right to find a verdict in favor of the plaintiff.

If, upon the whole case, you find negligence on the part of the defendant, the question would arise, how much the damage would be. [The plaintiff, in that event, would be entitled to recover just so much as he satisfies you he has suffered in consequence of that negligence.] [8]

If he is not entitled to a verdict, in view of what I have already said to you, your verdict should simply be for the defendant.

Defendant's points and answers thereto among others were as follows:

2. The warehouse receipt, which is the contract between the parties, stipulates that the defendant shall not be liable for any loss or injury resulting from decay; and the plaintiff having failed to show any gross negligence on the part of the defendant, the verdict of the jury must be for the defendant. *Answer:* That in effect asks me to charge your peremptorily as to what your verdict must be, and I must, therefore, decline it. [1]

4. The defendant having shown that the temperature of the

storage rooms was kept at a point at which the goods of the plaintiff should have remained in good condition, the damage to the goods cannot be charged to the defendant. *Answer :* That asks for a peremptory instruction, and I decline the point. [2]

5. The plaintiff having failed to show that every one of the squabs and chickens stored by him with the defendant were examined at the time of placing them on storage, and that they were in a fit condition at that time to be kept in cold storage, he is not entitled to recover, and the verdict must be for the defendant. *Answer :* That I decline because it asks for a peremptory instruction. [3]

8. The contracts of sale of the goods made by the plaintiff are not evidence of the market price of the squabs and chickens in question, unless it be shown that such price was the price of squabs and chickens which had been kept in cold storage for the length of time that the plaintiff's squabs and chickens had been kept. *Answer :* I affirm that point; in other words, I am asked to charge you that the price to be taken as the market price is the market price for just such squabs or chickens. That is true. [4]

9. The plaintiff is not entitled to recover any damages for losses sustained by him in the sale of any goods after the bringing of this suit. *Answer :* That is true. The ordinary rule is that damages to be recovered in any case must be damages which had accrued prior to the bringing of the suit. The statement in this case claims that at the time suit was brought what was left of the stock of the plaintiff had been depreciated in value to a certain extent, and that it was only worth so much. If the damage which had accrued then was so much, and the plaintiff is entitled to recover, then he will be entitled to recover for that amount of damage, and the subsequent prices realized are only of importance in the case so far as they bear on the question as to what the market value of what was left of the stock was at that time. [5]

10. There is no evidence in this case showing that the defendant did not exercise ordinary care of plaintiff's goods. As a bailee for hire, the defendant is not responsible for any accidental damage which may have occurred which was not caused by the defendant's negligence. *Answer :* This point asks for a peremptory instruction, and I must decline it. The last proposition

that, as a bailee for hire, the defendant is not responsible for any accidental damage which may have occurred, which was not caused by the defendant's negligence, is undoubtedly sound. [6]

Verdict and judgment for plaintiff for $3,850. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them; (9) in not directing a verdict for defendant; (10) in entering judgment for plaintiff.

*William W. Porter*, with him *Frederick J. Geiger* and *George Q. Horwitz*, for appellant.—The evidence was insufficient to show any negligence in the defendant: Tower v. Grocers' Supply & Storage Co., 159 Pa. 106; Aldrich v. Boston & Worcester R. R. Co., 100 Mass. 31; Edwards on Bailments, sec. 295; Story on Bailments, sec. 444; R. R. Co. v. McCool, 26 Ind. 140; Claflin v. Meyer, 75 N. Y. 260; Cass v. R. R., 14 Allen, 448; Williamson v. R. R. Co., 56 N. Y. Super. Ct. 508; Grier v. Nickle, 1 American Law Reg. 119; Boswell v. Collins, 8 Atl. Rep. 845.

*John G. Johnson*, with him *Frederick R. Reeves*, for appellee.

OPINION BY MR. JUSTICE GREEN, March 15, 1897:

The question at issue in this case was a question of pure fact, to wit, negligence of the defendant in caring for the plaintiff's goods while in their custody. The principal facts of the case are not in controversy. That is, the fact that the plaintiff did deliver to the defendant a large quantity of chickens and squabs in September, 1893, for preservation by means of cold storage, and the fact that when these goods were removed in the early part of the year 1894, a very considerable part of them was seriously injured by mould and decay, are well established by ample testimony which is not contradicted. Whether the defective condition of the goods was due to the negligence of the defendant in their preservation, was the sharply contested question before the jury, which it was necessarily their proper function to decide. If there was no evidence of negligence more than a scintilla, of course, there was nothing for the jury to consider, and it would be error to submit the question of negligence to be disposed of by them. The learned judge of the

court below, in answer to the eleventh point of the defendant, distinctly charged that negligence on the part of the defendant could not be assumed from the mere fact that the goods of the plaintiff were injured, and that negligent acts or omissions causing injury must be affirmatively proved.   The court also charged, in answer to the defendant's sixth point, that if the injury to the plaintiff's squabs and chickens arose from any other cause than the negligence of the defendant, no matter what the cause might be, the defendant was not responsible.   In affirming the point he also instructed the jury that if they believed that the goods stored by the plaintiff became mouldy and decayed, and that such condition might have resulted either from the goods not being fresh when originally packed, or being originally improperly packed, or being frozen too slowly while in the custody of another warehouseman, or by removal from another warehouse to the warehouse of the defendant, then the testimony of the plaintiff that there was dampness in the defendant's room is not sufficient to charge the defendant with negligence, and their verdict must be for the defendant.   In answer to the defendant's seventh point the court further charged that the fact that the plaintiff's goods were of a delicate and perishable nature, and were liable to spoil without any negligence on the part of the defendant, must be taken into consideration by the jury as relieving, or tending to relieve, the defendants from the charge that the goods were decayed through the negligence of the defendant.

In stating to the jury precisely what was the question for them to consider the learned judge said that " the real question —that is the primary question—is whether or not the defendant was negligent in the care of the poultry and squabs which the plaintiff put into its custody."   And in the general charge the court further said that the defendant company could not be regarded as guarantors that the articles deposited with it should come out perfectly sound.   " They do not guaranty against the operation of natural causes.   If either vegetables, or fruit, or meat, or poultry, put in such storage house, notwithstanding they are kept in a sufficiently cold atmosphere, decay, the storage company is not responsible for that.   They expressly exclude that ground of liability in their contracts, just as they do leakage, by which I do not mean leakage from pipes, but from receptacles which are put there for storage, containing articles

of whatever kind they may be." The court further charged that if the injury which subsequently accrued to the squabs and chickens resulted from the condition in which they were when deposited the defendant was not responsible, nor would it be if the goods were kept too long before they were stored, or if they were stored in an improper manner before they were delivered to the defendant, or if the injury resulted from any cause inherent in the articles themselves, and not produced by any thing which the defendant did, or omitted to do, in all these contingencies the defendant was not liable. And the learned judge further told the jury that if, after full consideration, they could not satisfactorily determine the question whether the loss and injury resulted from the acts or omissions of the defendant, then, also, they should find in favor of the defendant.

It seems to us that the charge was, in an eminent degree, fair, impartial, and conservative of every right which the defendant could assert. It committed nothing to the jury but the one bare question whether the loss and injury suffered by the plaintiff was occasioned exclusively by the acts or omissions of the defendant while the articles were in its care and custody. That question was necessarily for the jury, and the court could not have affirmed the second, fourth and fifth points of the defendant, because they all contained requests for binding instructions to the jury to find for the defendant.

The only remaining question to consider, is, whether there was evidence more than a scintilla, tending to establish the allegation of negligence against the defendant. Having read the testimony with much care, and having reference to the very subject, we are constrained to say that in our opinion there was an abundance of such testimony in the cause. Without stopping to repeat it in detail, it is only necesssary to say that in the testimony of Leidy, Van Ostrand, Drohan, Humphrey, Bergey, Lauter, Kitchen and Thompson, all of them examined for the plaintiff, may be found plentiful items of evidence, some on one subject and some on others, which are material, pertinent and convincing in a greater or less degree, illustrative of the very essential point of controversy.

Some of these witnesses describe the condition of the chickens and squabs when they were put in storage with Crowell & Class, some testify to their condition when taken out and removed to

the defendant's storage, others to the condition in respect to dampness and moisture observed in the defendant's rooms, others, to the condition of the goods when taken out and shipped to New York. On the crucial question as to the condition of the room, Bergey was asked, " Q. What was the condition of the room when you were doing that sorting? A. That day the dripping trough was wet, and the pipes were damp and rusty like in the center of the room. . . . I called Mr. Story's attention to it. The trough was wet; the pipes were also damp and, I think, some of them had no snow on at all. . . . Q. The troughs were wet? A. Yes, sir; and even that floor; it was also wet at that time." Lauter after describing the condition of the stock as being mouldy and some of it rotten, was asked, " Q. Did you see the room when you were doing that? A. Yes, sir; we also examined the room. Q. What was the condition of the room? A. The pipes were damp—not the pipes, but the trough was damp and the pipes were dripping. Mr. Bergey told me to look at that and I did so."

It was abundantly proved that moisture would form mould, and mould would cause rot. The condition of mould and decay of the chickens and squabs when taken out was proved by a mass of testimony which was really not contradicted. A number of witnesses proved the good condition of the stock when it was put into the storage, and the whole subject was fully developed in a large amount of testimony from which the jury could fairly infer all the conditions of the defendant's liability.

There was, of course, some conflicting testimony on the part of the defendant, all of which was for the consideration of the jury, but of which we can take no cognizance. We do not think that it was necessary to prove some specific act of negligence which produced the dampness or moisture. The fact that, being present, they tend to cause mould is itself evidence of negligence in permitting such conditions. We see no error in the charge or answers on the subject of damages. The right to recover was limited to the actual loss sustained. The defendant's ninth point relating to loss sustained after suit brought was affirmed with an explanation which it seems to us was entirely correct. We are quite clear that there was no error in the matter complained of in the fourth, sixth, seventh and eighth assignments, and, of course, as the case had to go to the

jury the ninth and tenth assignments cannot be sustained. The other assignments have already been covered. The discussions of the testimony contained in the argument of the learned counsel for the appellant are well and forcibly presented, but they pertain to the function of the jury, and it would not be practicable for this court to act upon them.

Judgment affirmed.