GEORGE HUNTER v. BALTIMORE PACKING & COLD STORAGE COMPANY.

January 30, 1899.

Nos. 11,433—(197).

**Verdict Sustained by Evidence.**
*Held,* that the evidence justified the verdict.

**Cold-Storage Warehouse Receipt — Exemption from Liability — Negligence.**
A warehouse receipt issued by a warehouseman to his bailor, excepting the former from liability for loss from certain causes, construed, and *held* that the loss in this case did not result from any of the excepted causes.

Action in the district court for Hennepin county to recover damages resulting from the negligence of defendant in the manner of storing plaintiff's eggs and for conversion. The case was tried before Simpson, J., and a jury, which rendered a verdict in favor of plaintiff for $2,214.29. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Arthur H. Noyes* and *Rolla E. Noyes,* for appellant.

The bailee may show that the bailor approved of the place of storage and that the goods were damp. Brown v. Hitchcock, 28 Vt. 452. If the bailor agrees to the place or manner of storage, he cannot afterwards object that it was negligent to keep them in such place or manner. Hale, Bailm. 67; McKay v. Hamblin, 40 Miss. 472. Where he knows the place and manner in advance, he must be presumed to assent thereto. Knowles v. Atlantic, 38 Me. 55; President v. American, 8 Allen, 512; Arthur v. St. Paul & D. R. Co.,

38 Minn. 95; Schouler, Bailm. (2d Ed.) § 102.   The terms of the special contract govern.   Hale, Bailm. 51; McCauley v. Davidson, 10 Minn. 335 (418); Ferguson v. Porter, 3 Fla. 27; Archer v. Walker, 38 Ind. 472.   A warehouseman's receipt brought to the customer's knowledge goes far to explain the nature of the undertaking. Schouler, Bailm. § 106; Hatchett v. Gibson, 13 Ala. 587; Patten v. Baggs, 43 Ga. 167.   A writing which is both contract and receipt may be explained and contradicted as to what it recites, but not so far as it is a contract.   Jones, Com. & T. Cont. § 187, and cases cited; Alcorn v. Morgan, 77 Ind. 184; Carpenter v. Jamison, 75 Mo. 285; Schultz v. Coon, 51 Wis. 416; McQuaid v. Ross, 77 Wis. 470; James v. Bligh, 93 Mass. 4; Sencerbox v. McGrade, 6 Minn. 334 (484); Cummings v. Baars, 36 Minn. 350.

*Edmund S. Durment,* for respondent.

If an exemption is stipulated for, it must be in unequivocal terms. New Jersey S. N. Co. v. Merchants Bank, 6 How. 344, 382; Mynard v. Syracuse, 71 N. Y. 180; Schouler, Bailm. (2d Ed.) § 446; Christenson v. American Ex. Co., 15 Minn. 208 (270); Bardwell v. American Ex. Co., 35 Minn. 344.   If the warehouse receipts are contracts, the condition is illegal and of no force.   Christenson v. American Ex. Co., supra; Shriver v. Sioux City & St. P. R. Co., 24 Minn. 506; Hutchinson v. Chicago, St. P., M. & O. Ry. Co., 37 Minn. 524; Hull v. Chicago, St. P., M. & O. Ry. Co., 41 Minn. 510; Shea v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 63 Minn. 228; Southard v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 60 Minn. 382, 387.   Moreover, within the rule stated in the last case, the jury could find that there was no consideration for the agreement, since wagon receipts were first issued, and the warehouse receipts were issued subsequently.

MITCHELL, J.

In 1896 the defendant owned and was operating a cold-storage warehouse, the refrigerating process in use being the generating of cold by ammonia expanded directly into the pipe service of the rooms.   In the spring of the year the plaintiff delivered to the defendant a large quantity of eggs for cold storage in its warehouse, where they remained during the summer and autumn.   This action was brought to recover damages resulting from the alleged neg-

ligence of the defendant in the manner of keeping and storing the eggs, which resulted in a very material deterioration in their quality and value. As a second cause of action, the plaintiff alleged a wrongful conversion of part of the eggs, but, as this cuts no figure on this appeal, it need not be again referred to.

Inasmuch as plaintiff's agent, who announced himself to be an expert on the subject of cold storage, examined defendant's plant, and expressed himself as satisfied with it before the eggs were delivered, the plaintiff cannot and does not claim that the warehouse was not a proper place in which to store the eggs. His grounds of complaint are (1) that the defendant negligently permitted ammonia to escape from the pipes, which permeated the room in which the eggs were stored, and communicated its flavor to them; (2) that defendant negligently handled and stored fruit, especially lemons, in corridors and rooms in close proximity to that in which the eggs were stored, gases from which entered the room and communicated a bad taste to the eggs. Something was said on the trial about the defendant having neglected until midsummer to put a fan into the room to supply proper ventilation; but very little evidence was introduced upon this subject, and comparatively little importance seems to have been attached to it.

1. Defendant's first contention is that the verdict, which was in favor of the plaintiff, was not justified by the evidence.

The evidence is very voluminous, and, as might be expected, very conflicting. The plaintiff introduced evidence tending to prove that the eggs were in good condition when placed in store; that ammonia was allowed to escape into the building on at least two occasions; that fruit was stored and handled in the same building, and in proximity to the room in which the eggs were stored; that the gases from the fruit had opportunities to escape into that room; that this was improper and negligent, owing to the great susceptibility of eggs to take a flavor or taste from any such gases with which they come in contact; that, when the eggs were shipped out in the fall and winter, they were "tasty," having an acrid or sharp taste, different from what is called a "musty" taste; that the same was true as to other eggs stored in the warehouse during the same summer and autumn. On the other hand, defendant introduced

evidence tending to prove that some of the eggs were damp and un-fit for storage at the time they were brought to the warehouse; that on the two occasions referred to the escape of ammonia was caused by an accidental breakage in the pipes; that the odor was very slight and of short continuance; that the gases from the fruit stored and handled in the warehouse could not have escaped into the egg room, and that other eggs stored in the same manner as those of plaintiff were found in good condition when sold and removed in the fall and winter.

Without discussing the evidence further, we are of opinion that it justified a verdict for the plaintiff.

2. The second contention of the defendant is that the three ware-house receipts issued by it to the plaintiff constituted a special writ-ten contract between the parties, limiting the common-law liability of the defendant, which could not be varied by parol, and therefore the court erred in submitting to the jury the question as to whether there was a special contract limiting defendant's common-law lia-bility. The warehouse receipts, which were issued after the prop-erty was delivered for storage, were to the effect that the defendant had received on storage from the plaintiff so many cases of eggs, subject to his order, on payment of charges.

"All loss or damage by fire, water, ratage, leakage, breakage, frost, or to perishable property at owner's risk. This company will provide any desired temperature, but will not be responsible for re-sults. Not responsible for shrinkage in weights."

Upon the record, the point made is not open to the defendant. In its answer it expressly alleges that the contract was verbal. On the trial the plaintiff was permitted to introduce, without objection, oral evidence as to the terms of the contract, consisting of all the conversations between the parties at and prior to the time the eggs were stored. The defendant, in rebuttal, did the same thing, giving its version of all these conversations. But, in any view of the case, the question is immaterial. Aside from the question of the validity of any agreement to exempt a warehouseman from liability for losses resulting from his own negligence, it is perfectly apparent, from the mere reading of these warehouse receipts, that the loss in

this case did not result from any of the excepted causes. Loss to "perishable property" clearly refers to loss resulting from the inherent qualities of the subject of the bailment. The clause, "but will not be responsible for results," refers exclusively to the results of the temperature requested by the bailor. This covers all of any importance or substance in the assignments of error.

Order affirmed.