### SOUTHERN ICE & UTILITIES CO. v. STEWART. (No. 3613.)

Court of Civil Appeals of Texas. Texarkana. Feb. 22, 1929.

Rehearing Denied March 14, 1929.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). Appellant urges on appeal the two points that the findings of fact as made by the trial court were not only clearly contrary to the preponderance of the evidence, but that the evidence was legally insufficient to show actionable negligence. It was admittedly proven that the appellee delivered to appellant a large number of cases of eggs in April, 1926, for preservation by means of cold storage until January following, subject to be sooner withdrawn at the option of appellee. At the time of delivery to appellant the eggs were fresh eggs, sorted, graded, and packed in suitable cases or boxes. When the eggs were withdrawn by appellee, the evidence abundantly shows, and there is but slight evidence to the contrary, they were discovered to have become deteriorated in quality, the yolks being dark and the whites of thin watery nature, and affected with the odor of lemons. The trial court concluded that the condition of the eggs at the time of withdrawal was occasioned or contributed to by specific negligence in the particulars, respectively, of uneven distribution of temperature to the eggs, of maintaining excessive moisture in the room, and of permitting lemons to be stacked near enough to the eggs for the latter to absorb the odors therefrom. In these contingencies, or any of them, if warranted by the evidence, the appellant would be legally liable. According to the evidence in behalf of the appellant, considered of itself and standing alone, the cases of eggs were stacked in the room in full accord with the most approved practice and way done in all cold storage plants. The cases were rested on a 2x4 plank, with a half-inch strip inserted between the cases and with an inch strip inserted between the rows or tiers of cases. In the stacking an open space of an inch or more was left between the rows and between the cases, and such condition continued, to freely and sufficiently admit of even distribution of temperature alike to all the eggs. On the other hand, the evidence in behalf of the appellee, considered of itself and standing alone, shows that the cases were rested on a 2x4 plank, and the rows or tiers of cases were made to closely adjoin each other and were

without strip or space left between them, and the cases were made to rest one on top of the other, with only a strip of between one-fourth and one-half inch between them. There was considerable proof that the proper practice and ways, as adopted by large storage plants, to secure even distribution of temperature, was to allow an open space between the cases themselves and between the rows or tiers of cases. On the other hand, there was proof by appellant that in some cold storage plants egg cases were customarily stacked in rows adjoining each other, without strips between them, and that such way of stacking sufficiently distributed the temperature for safe preservation. The effect of the court's finding upon this conflicting evidence was to sustain the appellee's contention as to the way the stacks were made and that such way of stacking prevented sufficiently even distribution of temperature alike to all the eggs.

Although the appellant did not expressly contract to stack the cases of eggs in any particular way, yet, in the absence of any agreement, the law imposed the duty upon it to use that degree of care in the preservation of the eggs which may reasonably be expected from a person of ordinary prudence under the circumstances. Its obligation was to keep the temperature of the room at the ordinary and usual cold storage temperature and evenly distributed alike to the eggs. There would be default in the duty if the temperature was unevenly distributed, although the proper temperature of the room was maintained. And such default may be held to arise, as the trial court found, upon failure to do that usually done in cold storage rooms and most generally thought to be sufficient to evenly distribute the temperature to the chattels undertaken to be preserved. Whether the condition of the eggs as discovered at the time of the withdrawal from storage for sale was in fact occasioned or contributed to by uneven distribution of temperature was entirely dependent upon the inferences reasonably allowable to be drawn by the court in the circumstances. Nonconformity with the approved practice of stacking the cases in order to allow even distribution of temperature became a circumstance, though not conclusive, tending to show insufficient temperature to all the eggs, although sufficient for part of them. The act of omission allows such an inference. An uneven distribution of temperature, or as called in the evidence lack of "sufficient circulation of air," was shown to work injury to the preservation of eggs, in tendency to cause or contribute to cause the yolks to become dark and the whites thin and watery. The eggs were discovered to be in that condition when withdrawn from storage. And there is evidence that eggs of the kind that were delivered by appellee for storage will ordinarily for the most part keep up in quality for the length of time the eggs in question were kept in appellant's plant,

under maintenance of proper temperature if such temperature is evenly distributed. And there is evidence that at the time of delivery to appellant the eggs were fresh eggs, sorted, graded, and packed in suitable cases or boxes. The special circumstances go to show that the loss resulted from or was contributed to by the negligent act in the natural order of cause and effect. There is not an absence of substantial evidence to support the court's finding that there was an uneven distribution of temperature and that it proximately caused or contributed to the damaged condition of the eggs. It is true that although the eggs were delivered in fresh condition to appellant, the mere fact, standing alone, that they were redelivered to appellee in inferior condition, would not justify the presumption of negligence on the part of appellant. That rule does not apply to chattels which deteriorate or decay through operation of inherent or natural causes. Patterson v. Wenatchee Canning Co., 53 Wash. 155, 101 P. 721. Eggs are, as admittedly appears, inherently of a delicate and perishable nature. They are liable to decay and do not long stand up under ordinary circumstances. The yolks normally turn dark and the whites become thin and watery. Especially, as shown, are "grass eggs" inherently of very delicate and perishable nature, out of or in storage. But the finding of the court is not based on presumed negligence, but upon affirmative acts of specific negligence. And although eggs have the natural tendency to let down in quality, yet it may not be said that such would necessarily happen notwithstanding an act of negligent omission to use reasonable care for their preservation. A negligent act, such as failing to evenly distribute temperature, may hasten, proximately cause or contribute to, the deterioration in quality. Such consequences could result from such negligent act in the natural order of cause and effect. It is not legally necessary that the negligent act solely cause the deterioration or loss. The case is proved if the act or omission was in itself a want of ordinary care and prudence and immediately, and not remotely, contributed to the deterioration or loss. The court's finding, as evidently intended, was to the effect that the negligent act, as found, did not proximately cause or contribute to cause the entire loss sustained, but only in the proportion of 80 per cent. of the 1,188 cases. As found, in effect, 10 per cent. of the loss sustained was caused by natural causes that would necessarily have happened notwithstanding the negligence. Also that of the loss sustained 10 per cent. was occasioned solely through the fault of appellee in delivering faulty or unfit eggs for storage. There is no complaint on appeal of excessive damages.

It was further proven by appellee that lemons were stacked in the hallway next the room in which the eggs were stored, and that they were there in September and October;

that when the door of the room was opened, although open for a very short time, the odor of the lemons came into the storage room; that the employees opened the door for inspection of the room several times a day; that eggs naturally and easily absorb odor, and it renders them of lower quality and value. On the other hand, the appellant proved that the lemons were in the hallway for only a part of the day, until they could be placed in a different place; that no odor was in the egg room; and that odors could not penetrate the walls of the room from the hallway. Upon this conflicting evidence the court, in effect, sustained the appellee's contention. There is evidence showing that the eggs when withdrawn from storage had the odor of lemon, and that such condition affected the market value. There is proof that the eggs were shipped to Chicago in refrigerator cars that carry fruit and other products. But there is no evidence going to show that such cars had recently transported lemons, or that odors therefrom were in the cars. In such situation the question of negligence proximately causing or contributing to cause the injury complained of was necessarily one for the trial court, and his finding is conclusive. A liability was established for the act. Smith v. Diamond Ice & Storage Co., 65 Wash. 576, 118 P. 646, 38 L. R. A. (N. S.) 994; Holt Ice & Cold Storage Co. v. Arthur Jordan Co., 25 Ind. App. 314, 57 N. E. 575; Leidy v. Quaker City Cold Storage & Warehouse Co., 180 Pa. 323, 36 A. 851; Hunter v. Cold Storage Co., 75 Minn. 408, 78 N. W. 11.

It is believed that the evidence does not warrant a finding that excessive moisture proximately caused or contributed to cause the injury to the eggs. It is affirmatively shown that no water accumulation existed since October. The mechanical devices operated to take up excessive moisture, and naturally did so during the several months after October. And it affirmatively appears that the eggs were taken from the refrigerator cars and kept in a storeroom for two days. This fact reasonably may, and probably did, account for the sweat or mould of the eggs. At least the condition of the eggs as to moisture or mould was consistent with causes other than the negligent act complained of. But the elimination of this fact does not affect the case, as the other negligent acts were sufficient to have produced the loss.

Having carefully considered the case, we have reached the conclusion that we may not, in view of the evidence, disturb the court's findings, except as to the ground of excessive moisture. The other errors assigned, complaining of admission of evidence, should, we conclude, be overruled.

Appellee argues on cross-assignment of error that judgment should have been entered in his favor for the ten cases of eggs as found in the finding to be "a total loss." It is believed that the court intended to deny, as he did do, recovery for this lot of eggs, upon the ground that such condition would have resulted notwithstanding negligence of appellant. At least, we cannot say from the record that the court did not intend to so hold. He found that in the early withdrawals the eggs "were in a damaged condition" which was caused "by the acts of negligence." He further specially found that ten cases of the eggs "were a total loss," but did not find that such "total loss" was due to negligence.

The judgment is affirmed.