## Roberts et al. *v.* General Cold Storage Company, Appellant.

Argued October 7, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Charles Denhy, Jr.,* for appellant.

*Joseph S. Clark, Jr.,* of *Dechert, Bok, Smith & Clark,* with him *Owen B. Rhoads,* for appellees.

OPINION BY RHODES, J., January 31, 1936:

The plaintiffs brought this action of trespass to recover damages for the loss of, and injury to, certain lily-of-the-valley pips, which were stored in the cold storage warehouse of the defendant company, in Philadelphia. The plaintiffs recovered a verdict in the court below, and judgment was entered thereon. The defendant appealed to this court. The only errors assigned by the appellant on this appeal are the refusal by the court below of the defendant's point for binding instructions, and the dismissal of defendant's motion for judgment n. o. v. The sole question involved is whether there is sufficient evidence of negligence on the part of the appellant to sustain the verdict of the jury.

The plaintiffs, as trustees under the will of Anna

Taylor Stokes, conducted a florist business, at Moorestown, New Jersey, under the name of Floracroft Gardens. The plaintiffs purchased about 400,000 lily-of-the-valley pips, which were shipped from Germany. They arrived at New York and were inspected on November 30, 1931. They were shipped from New York by train on December 2, 1931, and arrived in Philadelphia and were put in defendant's cold storage warehouse on the afternoon of December 5th. The shipment consisted of 200 cases, each case containing 2,000 pips.

A lily-of-the-valley pip is the root and bulb of the plant, and they are largely grown in Germany. The pips in question were shipped to the United States, in cold storage, and were in good condition when delivered to the defendant in December, 1931. They were to be withdrawn by the plaintiffs as the market demand required. The pips produce lily-of-the-valley flowers after they are thawed out, planted in sand, and kept in a temperature of about 65 degrees. After being so planted for a period of about 21 days, the flowers can be cut and shipped to market. While in storage it is necessary that the pips be kept at a temperature sufficiently below freezing to prevent them from sprouting. If the pips sprout while in the boxes in storage, they become correspondingly less productive when planted. If the sprouting progresses too far, they are worthless. If they thaw and sprout and are frozen again thereafter, they either rot and become worthless or produce a poor quality of lily-of-the-valley flowers.

On or about the 25th of January, 1932, plaintiffs removed 25 cases from defendant's cold storage plant. The pips so removed were found in excellent condition. On or about October 31, 1932, plaintiffs removed 25 additional cases. Some of these pips were slightly sprouted. Those that were sprouted were not frozen. On or about December 4, 1932, additional cases containing plaintiffs' pips were removed from the cold stor-

age plant of the defendant. Nine cases were so badly sprouted that they were worthless. They were not in the required frozen condition, at the time of removal, so as to prevent sprouting and resultant deterioration. An inspection of the remaining cases in storage was then made, and 25 cases of those remaining were found to be so badly sprouted that they were worthless, and they were destroyed in bond. They likewise were not frozen. In addition to those already mentioned, 2,800 pips in the various cases previously withdrawn by the plaintiffs were so badly sprouted that they had to be destroyed. The jury's verdict in favor of the plaintiffs was in the amount of $1,770.76, and covered 25 cases destroyed in bond, 9 cases destroyed out of bond after delivery to plaintiffs, 2,800 pips destroyed either in bond or after delivery to plaintiffs, and loss resulting from sale of plants of inferior quality grown from pips partially sprouted.

In their statement of claim, the plaintiffs averred: "...... that the sprouting of said lily-of-the-valley pips and the necessary destruction thereof and loss to plaintiffs was solely due to defendant's negligence in the custody and storage of said pips ...... and ...... that defendant's negligence consisted in its failure to exercise such care in regard to the pips, stored with it and under its exclusive control, as a reasonably careful owner of similar goods would have exercised under the circumstances, more specifically in failing to maintain a sufficiently low temperature in the rooms in which the said goods were stored; in failing to keep the said pips frozen and at a freezing temperature constantly; in removing said pips from one storage room in the plant of the defendant without adequately providing for the proper transfer and subsequent storage thereof; in failing to provide proper stacking of the cases in which the pips were contained so as to permit thorough freezing of the contents thereof; and, in general, for care-

lessness and negligence in the storage of said pips; in failing to perform its duty as a bailee for hire of said pips, and for failure to store the said pips as a reasonably careful owner of said pips would have stored them under the circumstances."

It is the contention of the appellant that the plaintiffs failed to prove any negligence, and that the appellant was entitled to a verdict.

The Act of March 11, 1909, P. L. 19, §21 (6 PS §151), provides as follows: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise; but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

The pips were under the exclusive control of the appellant. They thawed and sprouted after having been placed in its cold storage plant. The temperature in the rooms where they were stored was not kept sufficiently low to prevent thawing and sprouting. The pips were first stored in room 2E of the appellant's plant, and subsequently removed to rooms 2F, 2G, and 2H. The cases were stacked, one on the other, with no strips between other than the cleats on the cases, which were approximately one-half inch in thickness. There was testimony to the effect that the cases were improperly stacked, and that, on account of the resulting lack of circulation of air, they generated heat, thawed and sprouted. An inspection of the cases without opening them would have disclosed the general condition of the contents and the inadequacy of the temperature. When frozen, the contents will rock in the boxes, and when thawed out, it will not.

Appellant took the position, on the trial of the case, that the temperature in the rooms in which the pips

were stored never exceeded 30 degrees; that the appellant followed expert advice as to the correct storage temperature; that, although the pips had been removed three times during the period of storage, no damage was done to them thereby; and that there was no negligence upon the part of the appellant in the method of stacking the cases which contained the pips. Appellant admits that the temperature first adopted was not sufficiently low to preserve the pips, and that the opinion of the experts, followed by the appellant, was wrong.

Appellant also contends that it acted in accordance with expert advice, and that, where recognized expert opinion is divided as between two or more conflicting courses of action, appellant was not negligent if, with care and in good faith, it followed the course recommended by one of such lines of authority, and that it cannot be held liable for injury resulting from such action, even though subsequent events proved its course of action to have been wrong.

The purpose for which the plaintiffs placed the pips in cold storage in appellant's plant was for the preservation of the property stored. The plaintiffs' property was in good condition and properly frozen when placed in the cold storage plant of the appellant in December, 1931. While in the exclusive possession of the appellant, plaintiffs' pips thawed and sprouted. This result, the jury could properly conclude from the evidence, was produced by improper storage and inattention, as well as by the failure to maintain a proper temperature. The plaintiffs' testimony shows the manner in which their property was kept by the appellant, and the results thereof. Plaintiffs' goods were injured by no act or cause other than the acts of the appellant.

In the case of Nix & Company v. Herbert, (Va.) 140 S. E. 121, 55 A. L. R. 1098, the plaintiff brought an action against the defendant to recover damages for

loss and injury to 4,577 barrels of apples stored in the cold storage warehouse of the defendant. In that case the court stated, 55 A. L. R. 1098, at page 1101, as follows: "One who commits his apples to a cold storer has the right to expect—not preservation, for that is impossible beyond a certain period—but a prevention of decay for a reasonable period, depending upon the circumstances of each particular case. Without this expectation the storage of perishable products would be but a venture. ...... The storer, like the carrier, has absolute control of the goods. The owner has no opportunity, except perhaps by permission, to observe conditions, and no power to alter them."

In the instant case, it was for the jury to determine, from all the evidence, whether the appellant was negligent or failed to exercise due care; and it was only for the court to determine whether there were facts from which negligence of the appellant might be inferred. We are of the opinion that the plaintiff produced sufficient evidence to require the submission of the question to the jury. Appellant's explanation of the injury to the plaintiffs' property in its possession was for the jury. Appellant's contention that, having followed expert advice, it was thereupon entitled to binding instructions or judgment n. o. v. is without merit.

In the case of Leidy v. Quaker City Cold Storage and Warehouse Company, 180 Pa. 323, 36 A. 851, the plaintiff delivered to the defendant a large quantity of chickens and squabs for preservation by means of cold storage. When the goods were removed, a very considerable part of them was seriously injured by mold and decay. Whether the defective condition of the goods was due to the negligence of the defendant in their preservation was held, under all the evidence in the case, to be a question for the jury.

We are of the opinion that the evidence was sufficient to justify the jury in finding that the appellant was negligent in the care of plaintiffs' property.

Judgment is affirmed.