BOOTH v. THE FARMERS AND MECHANICS' NATIONAL BANK OF ROCHESTER, appellant.

*Practice — misjoinder of causes of action.*

The plaintiff brought action for damages arising from the satisfaction by defendant of a judgment that had been previously sold and assigned to plaintiff. The complaint contained two counts. The first set forth the acts of the defendant, and simply claimed that thereby the judgment was lost, and that the plaintiff had suffered damages to the extent of its face value; the second alleged that defendant was indebted to plaintiff for money had and received to the use of defendant.

*Held,* that a demurrer was proper, on the ground that two causes of action, one arising out of injury to property and the other out of contract, were improperly joined. The first cause of action was equivalent to *case* under the old practice.

Where *case* and *assumpsit* were at common law concurrent remedies, the form
of the action that the pleaders elected was determined by the insertion or
omission of the allegation that the defendant "undertook and promised."
The right of selection remains, and, whether the action is in *tort* or *assumpsit*,
must be determined by the same criterion.

APPEAL from an order of the special term, overruling the defendant's demurrer to the plaintiff's complaint, on the ground of misjoinder of causes of action.

The complaint, in substance, sets forth for the first cause of action, that on the 29th of December, 1860, the Farmers and Mechanics' Bank of Rochester recovered a judgment against Archibald H. McLean, Hector McLean and Theodore S. Goddard, impleaded with Charles L. Flint, for $3,503.21, which was docketed in Monroe county, and two days thereafter docketed in Livingston county. That on the 11th of December, 1861, the bank, for a valuable consideration, sold and assigned the judgment to the plaintiff. That, after the docketing of the judgment, one or more of the defendants were seized of real estate situated in the counties of Monroe and Livingston, and certain parcels said to belong to one of the defendants in such judgment were particularly described. That on the 11th of April, 1864, the bank discharged the judgment. That, by reason of the discharge of the judgment, the defendant owning the lands therein was enabled to and did convey them to *bona fide* purchasers, and that, had it not been for the discharge, the assigned judgment would have been a valid lien thereon. The complaint further states that the defendants McLean and Goddard are insolvent and the judgment not collectible from then, and concludes the first cause of action as follows: "Wherefore the plaintiff says that he has lost the said judgment, which otherwise might and could have been collected, and has sustained damages to the amount of $3,503.21, with interest thereon from the 29th day of December, 1860."

The succession of the defendants in this action, to the rights and liabilities of the Farmers and Mechanics' Bank of Rochester, is alleged. The remainder of the complaint is as follows:

" *Second.* And for a further and separate cause of action against the defendant herein, the plaintiff says that the defendant is indebted to him in the sum of $3,503.21, with interest thereon from December 29, 1860, for money had and received by the defendant at or about that day to and for the use of the plaintiff; yet, the said defendant,

although often requested so to do, hath hitherto neglected and re-fused to pay the said sum unto the plaintiff, or any part thereof.

" Wherefore, the plaintiff demands judgment against the defend-ant for the sum of $3,503.21, with interest thereon from the 29th day of December, 1860, in gold, besides the costs of this action."

The ground of the demurrer was, " That several causes of action have been improperly united," to wit:

" A cause of action arising out of an alleged injury to property, and a cause of action arising out of contract express or implied."

The defendant appeals from the order overruling the demurrer.

*Theodore Bacon* and *Henry R. Selden,* for appellant.

The first cause of action is *in tort* for " an injury to property," and could properly be joined with a cause of action for a conversion of personal property.

The case of *Cleveland* v. *Barrows,* 59 Barb. 364, decided in this department in February, 1871, seems to be conclusive on this sub-ject. See *Sweet* v. *Ingerson,* 12 How. 331; *Springsteed* v. *Lawson,* 14 Abb. 328; 2 Hill. on Torts, ch. 17.

The judgment was personal property (Code, § 463), and the de-struction of the record of it by the defendant was as clearly an " injury to property within *subdiv.* 3 of section 167 of the Code, as the destruction of a promissory note or bond after sale of it would be.'

The act of the defendant here was much more clearly " an injury to property," than was the fraud in the case of *Cleveland* v. *Barrows.*

It is not alleged that the bank was paid any thing for discharging the judgment, but the character of this cause of action would not be changed if it had been alleged that the bank was paid the full amount of the judgment. *It was the same wrong for the bank to discharge the judgment with payment as without.* It had no right either to receive payment or to discharge the judgment.

If the bank had received the money the plaintiff could doubtless have waived the tort and brought this action for the money; but this he has not done.

On the contrary, the only ground of this cause of action is the wrongful act of discharging the judgment. *That is clearly a tort.*

The ground on which the court below placed its judgment we think wholly untenable. That ground was that the gist of the action was " a breach of a contract on the part of the bank, implied

from their assigning the judgment to the plaintiff for a valuable consideration, that they would not discharge it to his injury." We suppose the seller of a judgment no more enters into a contract not to destroy it, than the seller of a horse into a contract not to kill it; if the seller of a horse should afterward wantonly kill it, we hardly think "*assumpsit*" would lie in behalf of the purchaser to recover its value. If the seller of a note were afterward to obtain and burn it, or the seller of a mortgage to obtain it and tear off the seal, we do not suppose that assumpsit would lie on account of any supposed agreement not to injure the thing sold.

But if there be any such implied agreement which the party injured, waiving the tort, may avail himself of, he must frame his action accordingly. *The act itself is clearly a tort and nothing else*, and it is only by a fiction of law, if at all, that it can be regarded as any thing else. The plaintiff here has seen fit to allege the facts which constitute the wrong, and nothing more. He has not claimed the benefit of any contract if the law could imply one.

It cannot be denied that, assuming that there was an implied contract which might have been made the basis of an action, there was also *a tort* which might have been made the ground of action *at the plaintiff's election*. *Now* if he had elected to proceed for *the tort*, and not on the fiction of a contract, we would ask how he would have framed his complaint differently from what he has done. *If this complaint* be not in tort, it is not possible to frame one in tort based on such a transaction.

II. The first cause of action in the complaint being in tort for "an injury to property," and the second "on contract" (debt on simple contract), the complaint is defective for the cause assigned. Code, § 167; *Dewey* v. *Ward*, 12 How. 422, 423.

*W. F. Cogswell*, for respondent.

The demurrer was not well taken, and was properly overruled by the court.

The Code (section 167) was intended to express, in general terms, the common law as to joinder of actions, and to enlarge rather than restrict the right to join the same.

The first cause of action in the complaint at common law was assumpsit, and founded on the implied contract. *Kortright* v. *Buffalo Commercial Bank*, 20 Wend. 91; S. C. affirmed, 22 id. 348;

*Rex* v. *Bank of England,* 2 Doug. 524; *Gray* v. *The Portland Bank,* 3 Mass. 364; Stephens on Pleading, 19.

This cause of action certainly does not fall within the third subdivision of the section, "injuries with or without force to person and property, or either." To sustain this demurrer will be to hold that this cause of action might be united with trespass to real estate or personal property, or even assault and battery, which is absurd; it must fall under one or the other of these definitions, as there is none other in the section under which it can be pretended that it can be placed.

The case cited from Massachusetts is a direct authority for the union of these two causes of action.

MULLIN, P. J. · Before the introduction of the system of pleading prescribed by the Code, the actions of *assumpsit* and *on the case* were concurrent remedies for many injuries resulting from nonfeasance, misfeasance, and malfeasance to personal property. 1 Chitty's Pl. 153. When *assumpsit* was adopted, the pleader was bound to allege that the defendant undertook and promised to do, or not to do, the particular act, which was the cause of the injury sustained by the plaintiff, or that he undertook to do it in a skillful and proper manner. Nevertheless, the said defendant, not regarding his said promise and undertaking, but contriving and intending to injure the plaintiff, did, or omitted to do the act, the doing or omission to do which caused the injury. 1 Chitty's Pl. 135, 136. The count in *case* is substantially the same as that in *assumpsit,* except the allegations that the defendant promised and undertook to do, or not to do, the particular act complained of is omitted. See 1 Chitty's Pl 320, etc. In the first count of the complaint demurred to these allegations are omitted, thus leaving it à count in *case.* If the pleader is right in supposing that the law implied a promise by the bank not to satisfy the judgment, after it was assigned to the plaintiff, he was bound to allege that the bank undertook, and promised not to satisfy, etc., in order to make in a count on contract. The case of *Kortright* v. *Buffalo Commercial Bank,* 20 Wend. 91, was in *assumpsit* to recover for a breach of the promise the law implied against the bank, with its stockholders, that it would permit a transfer of its stock on its books, in case of a sale thereof. This was a duty imposed by the charter of the bank, and when a duty is imposed by law on a corporation a promise to per-

form it is implied. A promise was, doubtless, alleged in the declaration in that case, thus making it a count in *assumpsit*. The codifiers, while proposing to abolish the distinction between forms of actions, found it impossible or impracticable, in many cases, to effect their object, and this case illustrates the failure in at least one class of cases. When *case* and *assumpsit* were, at common law, concurrent remedies, the form of action that the pleader selected was determined, as I have shown, by the insertion or omission from the declaration of the allegation, that the defendant " undertook and promised." This right of selection remains, and whether the action is in *tort* or *assumpsit* must be determined by the same criterion. If this is not so, then the right of election is taken away. If taken away, which of the two is left? An action on contract cannot be joined with one in tort. How are we to determine whether the action is one on contract or in tort, unless the pleader, by averment, alleges the making of the contract, and demands damages for a breach in the one case, or by the omission of such an averment makes it an action in tort. I know of no more certain or convenient criterion by which to determine the class to which a cause of action belongs than the one suggested. If some such rule is not established the question of misjoinder will arise in every case in which, at common law, *assumpsit* and *case* were concurrent remedies.

The order of the special term is reversed and an order granted, sustaining the demurrer, with leave to plaintiff to amend in twenty days on payment of the costs of the demurrer and of the appeal.