A. H. MOTLEY & CO., v. SOUTHERN FINISHING AND
WAREHOUSE COMPANY.

(Decided May 17, 1898).

*Action for Damages—Warehouse Storage Company—
Liability of Warehousemen — Negligence—Corpora-
tion—Charter — Exclusive Privileges — Measure of
Damages.*

1. While warehousemen are not insurers like common carriers, they are
   liable for damages, caused by their negligence, to articles stored
   with them.

2. A provision in a charter of a warehouse corporation to the effect that
   such corporation shall not be liable for loss or damages not provided
   for in its warehouse receipt or contract, attempts to confer exclu-
   sive privileges and is therefore unconstitutional and void.

3. The measure of damages for property damaged while in the care of a
   storage or warehouse company is the difference between the
   market value of the property in its damaged condition and what
   it would have sold for, if undamaged, on the day of its return to
   the owner.

CIVIL ACTION for damages tried before *Robinson, J.*,
and a jury at January, 1898, Special Term of GUILFORD
Superior Court. There was a verdict followed by judg-
ment for the plaintiffs and defendant appealed.

*Messrs. Shaw & Scales* and *Bynum & Taylor,* for
plaintiffs.
*Messrs. R. R. King* and *C. M. Stedman,* for defend-
ant (appellant).

FURCHES, J.: Plaintiffs are tobacco dealers and de-
fendant is a chartered warehouse company. Plaintiffs,
at the solicitation of defendant deposited a quantity of
leaf tobacco in defendant's warehouse and took the fol-
lowing receipt therefor: "Greensboro, N. C., Oct. 16,

1894. Received in store from J. S. Cobb & Co., 73 hogsheads leaf tobacco, subject only to the order hereon of J. S. Cobb & Co. and the surrender of this receipt, and payment of charges. Southern Finishing & Warehouse Co., J. W. Lindau, Secretary."

This tobacco remained in defendant's warehouse until the first of June, 1895, when it was delivered to the plaintiff in a damaged condition, and this action is for damages.

It does not seem to be disputed that the tobacco was in a damaged condition when delivered to plaintiff in June, 1895. But defendant contends that it is not liable for the damaged condition of the tobacco; that defendant is a corporated company and by the terms of its charter it is exempt from liability for such damages, unless it expressly contracts to become liable, and that this liability must be stated in its warehouse receipt. Defendant also contends that said damage to the tobacco was from defective manipulation and packing by plaintiff and from natural causes after it was delivered to defendant, and not from any default or negligence on the part of defendant.

Upon the trial the defendant offered in evidence an Act of the Legislature of N. C. authorizing its incorporation, called its charter, which contains the following: "Provided, however, that said company shall not be held responsible for losses arising from the act of God or of common enemies, nor for any loss or damage not provided for in its warehouse receipt or contract and said company may make such stipulations in its warehouse receipts or contracts as to loss or damage arising by fire or other cause as it may deem necessary and proper."

The law as to the liabilities of a public warehouseman is as well defined and understood as is that of common

carriers and of public inns.    And while the liabilities of warehousemen are not that of insurers, as are common carriers, they are liable for damage caused by their negligence.    This law is general and applies alike to all warehousemen, whether incorporated or not.    It is the law of the land that governs the warehouse business of every individual citizen of the State and must govern in corporations, unless they can have special *contract rights* granted to them that the citizens of the State do not and cannot have.    This the defendant claims to have under its charter.    Defendant says that all legislative power is granted to and abides in the legislature, not restricted or prohibited by the Constitution, and cites several text writers and adjudications from other Courts to sustain this contention.    But defendant need not have gone abroad for authority to support this contention.    It has been so held by this Court in *McDonald* v.*Morrow*, 119 N.C., on p. 666; *Commissioners* v.*Snuggs*, 121 N. C., 394, on p. 404.    But this does not decide the question at issue.    It only brings us to the consideration of the question as to whether this provision in defendant's charter is unconstitutional or not.    And we are of the opinion, both upon principle and authority, that it is.·

It will not be contended that any citizen of the State ·—any natural person—has such powers and privileges as those contained in this charter and claimed to be conferred upon the defendant.    Nor will it be claimed that the Legislature could confer any such powers and privileges, as those contained in this charter and claimed by defendant, upon any citizen or natural person of the State.    It must, then, be held that this charter attempts to confer upon defendant a special power and privilege that no citizen or natural person in the State has; and

such a privilege as the Legislature could not confer on any of its citizens. This is prohibited by Article 1, Section 7, of the Constitution of N. C., which provides that "no man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services."

This was held by this Court in a well considered opinion (written by Bynum, J.) to apply to exclusive privileges attempted to be given to the Bank of Statesville, a private corporation, in its charter. *Simonton* v. *Lanier*, 71 N. C., 498. The same doctrine is announced in the well considered opinion (written by Shepherd, C. J.,) in *Slaton* v. *Railroad*, 111 N. C., 278.

It was contended for defendant that the Legislature has conferred upon railroads the right to take lands for the benefit of their roads; that it has conferred on some the right of easement of one hundred feet on each side of its track, and on others a less amount; that it could not confer upon its citizens this privilege, and yet this is held to be lawful. It is true that the Legislature has granted these privileges to railroads, and it has been held to be constitutional to do so. But this is under an exercise of the right of eminent domain and for the public benefit. And, then, it does not take the land from the owner and give it to the railroads, but only authorizes the railroads to acquire this easement by paying for it. In other words, it is a forced sale for the benefit of the public. And the same rule obtains as to public mill owners, and for the same reason—the public good.

But we fail to see the analogy between this case and the exercise of the right of eminent domain as in the cases stated. This case does not fall under the doctrine of eminent domain, and that doctrine does not apply.

But if it did, what benefit is it to the public that the defendant should be clothed with this extraordinary privilege over all the citizens of the State? What public services has it performed to entitle it to be exempt from the general law applying to other warehousemen? What benefit can this privilege be to the public? We must declare · that that portion of defendant's charter, attempting to exempt it from the same rule of liability that applies to other warehousemen, is unconstitutional and void, and the Court below committed no error in so holding and declaring.

But we are of opinion that there is error in the instructions of the Court submitting the question of damages to the jury. The measure of damage is not the difference between what the tobacco would have sold for, when delivered to defendant, and what it sold for in its damaged condition. This rule involves the fluctuations of the market. It may be that, if the tobacco had not been damaged, it would not have sold for as much when it was sold as it would have sold for when it was delivered to defendant. If so, it would not be fair to defendant to adopt this rule and make it liable for the depression in the market.

The true rule, by which plaintiff's damage should be ascertained (and we are taking it from the finding of the jury that plaintiff is entitled to damage), is to find what this tobacco would have brought on the market at Greensboro on the day it was delivered to plaintiff by defendant, if it had not been damaged; and then find what it would have brought on the same market, on the same day, in its damaged condition. These facts being found by the jury, the amount of damage will be ascertained by subtracting the less amount from the greater. The difference thus found will be the amount of damage.

The charge of the Court seems to us to have been full and fair to both sides, with this exception. For this error, the defendant is entitled to a new trial.

New trial.