THE HOLT ICE AND COLD STORAGE COMPANY *v.* THE ARTHUR JORDAN COMPANY.

[No. 3,076. Filed May 29, 1900. Rehearing denied October 5, 1900.]

WAREHOUSEMEN.—*Damages. — Breach of Contract. — Complaint. — Contributory Negligence.—Bailment.*—A complaint against a cold storage company for damages to butter stored which defendant, for a reasonable storage charge, paid by plaintiff, undertook and agreed to keep frozen and preserved, but which by its negligence was permitted to become contaminated by deleterious odors greatly diminishing its value, shows an action *ex contractu,* and is not defective because of its failure to negative contributory negligence on the part of the plaintiff. *pp. 316-320.*

SAME.—*Damages to Butter in Storage.—Measure of Damages.—Negligence.*—In an action against a storage company for damages to butter from contamination by deleterious odors while in storage in

Holt Ice, etc., Co. v. Arthur Jordan Co.

defendant's warehouse under a contract of bailment, with no time fixed by the parties when the bailment should end, the measure of damages is the difference between the market value of the butter, at the time the bailment was ended by the parties, if it had been in good condition, and the market value thereof in its damaged condition at such time, although the butter was continued in storage after both parties knew that a part of it had become damaged. *pp. 320-328.*

WAREHOUSEMEN.—*Damages.—Negligence.—Burden of Proof.—Instructions.*—An instruction in an action for damages to goods while in storage, to the effect that when plaintiff has shown that the bailee received the property in good condition, and returned it damaged, he has made out a *prima facie* case of negligence, but if defendant did account for the injury to the property in any manner consistent with the exercise of ordinary care on its part then plaintiff, in order to recover, must show that the damage occurred through negligence, states the law correctly. *pp. 328-331.*

From the Marion Superior Court. *Affirmed.*

*J. R. Wilson* and *M. M. Townley,* for appellant.
*R. W. McBride* and *C. S. Denny,* for appellee.

ROBINSON, C. J.—Appellee's complaint avers that appellant is a warehouseman maintaining storage rooms for storing butter and other articles of a perishable nature; that appellee was engaged in buying butter which it wished to preserve for future use; "that said defendant undertook and agreed with plaintiff that for a reasonable storage charge it would cause said butter to be kept in frozen storage in its said rooms, and that thereafter, to wit, from time to time during the months of May, June, and July of 1897, plaintiff did deliver to defendant large quantities of said butter, in all, 21,072 pounds, to be by defendant thus kept in frozen storage, and agreed to pay to defendant its charges therefor, which said charges plaintiff thereafter paid; and that in consideration of plaintiff's said promise to pay said charges, said defendant accepted and kept in its said frozen storage rooms all of said butter, and undertook to use ordinary skill, diligence, and care in the storage and preservation thereof. Plaintiff further avers that said defendant wholly failed to use due, ordinary, and reasonable care, skill,

and diligence in the storage and preservation of said butter, by reason of which it became, and was, impregnated with deleterious odors and flavors, which greatly diminished its value, to wit, in the sum of $5,000; all to plaintiff's damage in the sum of $5,000, for which sum plaintiff demands judgment."

Appellant answered in general denial. Trial by jury and verdict for appellee for $2,300. Appellant's motions for a new trial and in arrest were overruled. These rulings, and that the complaint does not state facts sufficient to constitute a cause of action, are assigned as error.

It is argued that the complaint is defective for failure to negative contributory negligence. If the recovery demanded is sought to be predicated upon the breach of a contract it was not necessary to aver the absence of contributory fault. It is insisted by appellant's counsel that the contract referred to in the complaint is purely as an inducement to what follows, and that the action is for damages arising out of a breach of duty imposed by law.

Although the code provides that there shall be but one form of action for the enforcement and protection of private rights and the redress of private wrongs, yet the courts have constantly kept in view the fundamental distinction between case and assumpsit. The distinction between actions *ex delicto* and actions *ex contractu* is as substantial and material under the code as before its adoption. The code may abolish the formal differences between such actions, yet the intrinsic and substantial differences remain as before. And where a party's contract rights have been violated by the wrongful and tortious act of another he may, as a general rule, sue for damages for the tort, or, waive the tort, and sue on contract. In such case, under the code and at common law, the party has the two concurrent remedies.

Where a pleader simply sets forth the facts of the transaction, it is often difficult to determine whether he has sued in tort, or waived the tort, and sued on contract, but in

every case whether the action is *ex contractu* or *ex delicto* must be determined from the facts which are averred as constituting the cause of action, not from averments which are neither issuable nor material.

In 1 Chitty on Pl. (16th Am. ed.), 397, the author says that when the declaration "is founded on the obligation of law, unconnected with any contract between the parties, it is sufficient to state very concisely the circumstances which gave rise to the defendant's particular duty or liability."

At common law a declaration in assumpsit must disclose the contract, its consideration, whether the contract was express or implied, and its breach. It was necessary to show a promise, either by directly averring that the defendant "promised", or by other equivalent words. *Avery* v. *Tyringham,* 3 Mass. 160; *Sexton* v. *Holmes,* 3 Munf. 566; *Cooke* v. *Simms,* 2 Call. (Va.) 39.

When pleadings were in Latin the word *assumpsit* was always inserted in the declaration as a description of the defendant's undertaking, and afterwards the word "undertook", though the promise be founded on a legal liability and would be implied in evidence, was always considered proper to be inserted in the declaration. Bacon's Abr., Assumpsit, F.; 1 Chitty on Pl. (16th Am. ed.), 152, 308, 397; 2 Chitty on Pl. (16th Am. ed.), 69, 144, 484; *Booth* v. *Farmers, etc., Bank,* 65 Barb. 457. For the difference at common law between the form of a declaration in assumpsit and one in case, see 2 Chitty on Pl. (16th Am. ed.), 60, 483.

In *Booth* v. *Farmers, etc., Bank, supra,* it is said: "When case and assumpsit were at common law concurrent remedies, the form of action that the pleader selected was determined, as I have shown by the insertion in or omission from the declaration of the allegation that the defendant undertook and promised. This right of selecting remedies, and whether the action is in *tort* or *assumpsit,* must be determined by the same criterion. If this is not so,

then the right of election is taken away. If taken away, which of the two is left? An action on contract can not be joined with one in tort. How are we to determine whether the action is one on contract or in tort, unless the pleader by averment alleges the making of the contract, and demands damages for a breach in the one case, or, by the omission of such an averment, makes it an action in tort? I know of no more certain or convenient criterion by which to determine the class to which a cause of action belongs than by the one suggested. If some such rule is not established the question of misjoinder will arise in every case in which, at common law, *assumpsit* and case were concurrent remedies."

While an express promise, or words equivalent to the averment of an express promise, was absolutely necessary in a declaration in assumpsit, yet, under the code, a promise need not be averred, if from the facts pleaded a promise would be implied by law. *Wills* v. *Wills,* 34 Ind. 106; *Goble* v. *Dillon,* 86 Ind. 327, 44 Am. Rep. 308.

In the case at bar the complaint shows an agreement under which appellant accepted for storage appellee's property, and for which appellee paid a consideration. The question is whether the complaint avers a promise, or facts implying a promise, to use diligence and care in the storage and preservation of the property. If there is such a promise, express or implied, it must be in the following: "And that in consideration of plaintiff's said promise to pay said charges, said defendant accepted and kept in its said frozen storage rooms all of said butter, and undertook to use ordinary skill, diligence and care in the storage and preservation thereof." The words quoted mean that in consideration of plaintiff's promise to pay the charges defendant accepted the butter and undertook to use skill and care in its preservation and storage. The neuter verb "undertake" sometimes means agree, promise. Soule's Synonyms; Century Dictionary. And taken with the context it is here

used in the sense of agreed or promised. The complaint means appellant undertook to use skill and care in the storage and preservation of the butter in consideration of appellee's promise to pay the storage charges. A consideration is alleged, and it was for this consideration that appellant undertook to use skill and care. Taking the complaint as a whole its averments show that the pleader relied upon the agreement, and that the action is on contract. See *Staley* v. *Jameson,* 46 Ind. 159, 15 Am. Rep. 285; *Burns* v. *Barenfield,* 84 Ind. 43; *Lane* v. *Boicourt,* 128 Ind. 420, 25 Am. St. 442; *Greentree* v. *Rosenstock,* 61 N. Y. 583; *Austin* v. *Rawdon,* 44 N. Y. 63.

In *DeHart* v. *Haun,* 126 Ind. 378, the words used in the pleading could not be construed as a promise, for the reason no consideration was alleged.

In *Boor* v. *Lowrey,* 103 Ind. 468, 53 Am. Rep. 519, the complaint averred that the plaintiff having sustained a fracture employed certain physicians, who undertook, for a certain reward, to treat the fracture; that they executed their undertaking negligently, in consequence of which plaintiff was injured. The court said: "It might well be said within the holding in *Goble* v. *Dillon,* 86 Ind. 327, that the action was brought in form *ex delicto,* but we choose to put it on the broader ground, that regardless of the form in which the action is brought, since the injury for which a recovery is sought is an injury to the person, it can not survive the death of the defendant." And when the same case was appealed a second time, *Hess* v. *Lowrey,* 122 Ind. 225, 17 Am. St. 355, 7 L. R. A. 90, it was said: "If the action is, as doubtless it should be, regarded as a suit *quasi ex contractu,* for damages for an injury to the person occasioned by the breach of a joint contract, the death of one of the defendants simply severed the joint liability and extinguished the claim against the decedent, while it continued in full force as to the survivor."

It must be noted also that the word "undertook" is used differently in the Boor-Lowrey case from the case at bar.

In the former the physicians simply undertook to perform the service; in the case at bar appellant, for a consideration, agreed to perform the services and undertook to use care and skill. The same distinction is also to be noted in reference to the cases of *Hoopingarner* v. *Levy,* 77 Ind. 455, and *Goble* v. *Dillon,* 86 Ind. 327, 44 Am. Rep. 308. In the case last mentioned the court said: "It is not alleged by whom the appellees were called upon and requested, or by whom they were to be paid a reasonable compensation, and if the allegation that 'they undertook the same', etc., can be said to be an averment of a promise, it is not stated to whom the promise was made." These observations clearly indicate that the complaint in that case was materially different from the complaint in the case at bar.

Having concluded that the complaint avers a contract to use skill and care in the storage and preservation of the property, the averment that appellant "wholly failed to use due, ordinary and reasonable care, skill and diligence in the storage and preservation of said butter, whereby it became" damaged, must be construed as an averment of the breach of the contract. The averments are that appellant contracted to do a certain thing, and that it failed to do it. The breach is pleaded as effectively as it would have been had the word itself been used. See *Lane* v. *Boicourt,* 128 Ind. 420, 25 Am. St. 442; *Coon* v. *Vaughn,* 64 Ind. 89.

As the action stated in the complaint is *ex contractu* an averment of the absence of contributory fault was unnecessary.

Complaint is made of the court's instruction concerning the measure of damages. That part of the instruction in question reads as follows: "If you find that the butter in controversy was in good condition when it was delivered to the defendant, and upon its return to the plaintiff it was found to be in a damaged condition from any act or omission of the defendant, then plaintiff's measure of damages would be the difference between the market value of the

Holt Ice, etc., Co. v. Arthur Jordan Co.

said butter in the city of Indianapolis at the time it was returned to the plaintiff, if it had been in good condition, and the market value at said time and place of said butter in its damaged condition. * * * If, however, you should find from the evidence that at any time while said butter was stored in the defendant's warehouse, defendant ascertained that the said butter was being damaged, and that it was likely to suffer further damage by remaining in said warehouse, and that upon ascertaining such fact the defendant informed plaintiff thereof, and requested and notified plaintiff to remove said butter from said warehouse, and which the plaintiff neglected and refused to do within a reasonable time thereafter, then the measure of plaintiff's damage would be the difference between the market value of said butter in the city of Indianapolis at the time plaintiff received such notice, if in good condition, and the market value of the same butter at the same time and place in its damaged condition, unless at the time of receiving such notice the state of the weather was such, or that by reason of plaintiff's having no other place in which to store said butter, the injury to the same at any time prior to the time it was removed would have been greater, in case it was then removed than it would be if it remained in defendant's warehouse, in which case the measure of damages would be as first above herein mentioned."

It appeared the butter was stored in a room opening on a hall, and that in other rooms opposite and opening on the same hall were stored oranges, lemons, and other fruits, the odors from which contaminated the butter. The butter, about 21,000 pounds, was placed in storage, beginning the latter part of May, through June and July. About 4,000 pounds were taken out in June, July, and August; and the balance, about 17,000 pounds, September 25, 1897.

The jury found as a fact, and there is evidence to that effect, that appellee first knew or learned that the butter,

or some of it, was contaminated by a foreign odor, July 23, 1897. Appellant requested an instruction, which was refused, to the effect that the measure of damages would be the difference between the market value of cold storage butter of the kind in controversy, and its market value in its damaged condition, at the actual time that the damage occurred; that if damaged in July it must be governed by the July price, and if it was injured in July or August and appellee knew that fact, that appellee could not, by keeping the butter in storage until a time when the market price was higher, thus enhance the damages recoverable.

The evidence shows a contract of bailment. The storage charges were three-sixteenths of a cent per pound for the first month and one-eighth of a cent per pound for each succeeding month. When entered into no time was fixed by the parties when the bailment should end. The storage charges were paid by appellee and accepted by appellant for storage up to October 1st. The butter was taken out of storage September 25th.

The paramount rule in assessing damages is that every person unjustly deprived of his rights should at least be fully compensated for the injury sustained. The question is as to the time when this compensation should be estimated. It is conceded that had the contract of bailment called for a delivery back on September 25th, that date would be taken in estimating the damages, because fixed by the contract itself. It must be conceded also that this bailment did not end until the property was removed from storage by the bailor, and when it was removed the bailment ended. The liability of appellant as bailee ended at that time. The acts and conduct of the parties at that time show that they then agreed that the bailment should then end. The parties themselves at that time fixed the termination of the bailment, and it was as effective as if, when entered into, the date for its termination had been fixed.

The contract made in May continued in force until September 25th, and was in force on that day. The contractual

obligation assumed by appellant when it accepted the property was that it would exercise care in its preservation and that it would deliver it over to the bailor at the termination of the bailment. So far as concerned the care required of appellant during the bailment, it is immaterial whether the contract when made had a fixed or uncertain duration. The obligation to return the property in as good condition as when received, except it may have been injured without the bailee's fault, continued until the bailment should end. Without stopping to inquire in what manner appellant might have terminated the bailment, it did not terminate it, but voluntarily continued it in force until the property was removed by appellee. It must be conceded that appellant could perform its part of the contract only by delivering up the property in good condition when the bailment ended. Appellee, having complied with the contract, had the legal right to such performance, and default in that regard was a violation of that right. The measure of appellee's damages is whatever it will take to place him in as good condition as he would have been had the contract been fulfilled. The value should be fixed at the time when, by appellant's fault, the loss culminates. As is said in 1 Sutherland on Damages (2nd ed.), §105: "The injured party ought to be put in the same condition, so far as money can do it, in which he would have been if the contract had been fulfilled or the tort had not been committed, or the loss had been instantly repaired when compensation was due." See Hale on Bailments & Car., 78, 98, 253; Schouler on Bailments (3rd ed.), §§117, 159; Lawson on Bailments, §§20, 344; Story on Bailments (9th ed.), §§269, 414; Ingram v. Rankin, 47 Wis. 406, 2 N. W. 755; Hyde v. Mechanical, etc., Co., 144 Mass. 432, 11 N. E. 673; Motley v. Southern, etc., Co., 122 N. C. 347, 30 S. E. 3; Hale on Damages, 185.

Although there was some evidence that odors were contaminating a part of the butter before the bailment ended, yet in legal contemplation appellee was injured when appellant failed to return the property in as good condition as

when stored. The fact that the market value of the property may have been greater or less at the termination of the bailment than at some time during the bailment has nothing to do with fixing the correct legal rule as to the measure of damages. The contract was from month to month. The record shows the contract of bailment was voluntarily continued by appellant after it knew a part of the butter was becoming contaminated. It had full control over the manner of storage and had it in its power to remove the contaminating influences.

In *Ingram* v. *Rankin,* 47 Wis. 406, 2 N. W. 755, the court said: "The rule fixing the measure of damages in actions for breaches of contract for the delivery of chattels, and in all actions for the wrongful and unlawful taking of chattels, whether such as would formerly have been denominated *trespass de bonis* or trover, at the value of the chattels at the time when delivery ought to have been made, or at the taking or conversion, with interest, is certainly founded upon principle. It harmonizes with the rule which restricts the plaintiff to compensation for his loss, and is as just and equitable as any other general rule which the courts have been able to prescribe, and has greatly the advantage of certainty over all others."

In *Motley* v. *Southern, etc., Co.,* 122 N. C. 347, 30 S. E. 3, tobacco was stored in October, 1894, for an indefinite period, and was returned to the owner June, 1895, in a damaged condition. It is not expressly stated when, but it is manifest from the opinion that the injury occurred sometime during the storage. The rule as to the measure of damages was held to be the difference between what the tobacco would have brought on the market at the place on the day it was delivered to the owner if it had not been damaged and what it would have brought on the same market on the same day in its damaged condition.

In actions for breach of a contract to deliver goods, the general rule is that the measure of damages is the difference

between the contract price and the market value at the time and place fixed by the contract. *Rahm* v. *Deig*, 121 Ind. 283; *Vickery* v. *McCormick*, 117 Ind. 594. It is true, in such cases, the contract itself fixes the time for the ascertainment of damages. And so a common carrier must deliver goods within a reasonable time after transportation, and damages for failure to deliver are to be ascertained as of the date of delivery.

In the case of *Adams* v. *Sullivan*, 100 Ind. 8, cited by counsel for appellant as sustaining its view of the instruction in question, appellee placed with appellant eggs and butter in cold storage beginning June 8th, and ending September 5th, and when withdrawn from storage they were found to be damaged, for which suit was brought. The trial court instructed the jury: "The plaintiff is, however, entitled to recover the highest market price he could have obtained at the time of the injury for the goods, had the defendants fully performed their duty and properly preserved the goods during the time they were bound under their contract to keep them in storage." Upon appeal this instruction was disapproved, the court saying: "The jury ought to have been told that in assessing the damages, the eggs should have been estimated according to their market value in the city of Indianapolis, *when they were injured*. The rules for the assessment of damages in actions of trover, for breach of a contract to be performed at a particular place, and for injuries to goods *in transitu* by common carriers, concurrently sustain us in the conclusion we have reached, adverse to the correctness of the instruction set out in part as above. Besides, when the market is fluctuating and the precise time somewhat indefinite, the average range of prices about the time inquired of affords the proper standard of the market value of a commodity."

Whether the expression "when they were injured" should read "where they were injured", and an examination of the original manuscript opinion as written leaves the question

in some doubt, we think it unnecessary to inquire, because the instruction was held erroneous for estimating the damages at the highest market price which might have been obtained for the eggs in any market. There seems to have been no controversy in the case about the time when the damages should be estimated. There is no question in the case about any injury prior to the time the eggs were withdrawn from storage. Obviously the damages were estimated as of the time they were withdrawn from storage, that is, when the bailment ended. It would seem from the opinion that the clause mentioned could have been omitted, so far as the effect then given it is concerned, as the statement is made that the rule for the assessment of damages for injuries to goods *in transitu* by carriers sustains the court in the rule announced; and it is well settled that damages for injuries to goods *in transitu* are not determined as of the time and place when and where injured, but they are to be ascertained as of the date of delivery. It is not intended to criticise in any way the case of *Adams* v. *Sullivan,* 100 Ind. 8, but taking the question at issue in that case and the opinion as a whole we do not think we have declared a rule in the case at bar at variance with the holding in that case.

The general rule is that in an action of trover the measure of damages is the value of the property at the time of the conversion. But the time of conversion is not always fixed by the same circumstances. So long as the wrongdoer retains the property in kind the owner may recover it. He may sue in replevin for the recovery of the specific property, or he may sue in trover for damages for the value of the property. If he sues for damages, a demand does not necessarily fix the time of conversion, but a demand and refusal are sufficient evidence of it. Even though the form of the property has been changed and its value increased it may be recovered in its changed form. Likewise its increased value may be recovered. An examination of the authorities will disclose that while the general rule is that the measure

of damages is the value of the property at the time of the conversion, it is not a universal rule. Thus in a suit for the value of logs appropriated by a defendant who had cut and hauled them to his mill about five miles distant, the measure of damages was held to be the value of the lumber in the logs at the mill at the time they were there converted, and not the value of the logs when severed from the freehold. *Everson* v. *Seller,* 105 Ind. 266, 5 Am. Rep. 189. See *Final* v. *Backus,* 18 Mich. 218. And in *Ellis* v. *Wire,* 33 Ind. 127, defendant took possession of wheat standing in the field, and afterwards harvested and sold the grain, and in a suit for conversion it was held the owner was entitled to the highest price of the property at any time between the taking and the sale. In *Citizens St. R. Co.* v. *Robbins,* 144 Ind. 671, it was held that the measure of damages for the conversion of railroad stocks is the highest intermediate value between the time of conversion and a reasonable time after the owner has received notice of the conversion to enable him to replace the stock, and in that case the date of the demand for the stock was fixed as the date of the technical conversion and the value of the stock was fixed as of that date. In *Arkansas Cattle Co.* v. *Mann,* 130 U. S. 69, 9 Sup. Ct. 458, 32 L. ed. 854, the conversion was held to have occurred when there was a refusal to comply with a demand. See *Vaughan* v. *Webster,* 5 Harr. (Del.) 256. In *Bank* v. *Boyd,* 44 Md. 47, suit for damages for the loss of bonds, the measure of damages was the market value of the bonds when lost.

It will be seen from an examination of the above cases that a demand and refusal are evidence of a conversion, but that they do not fix the time of conversion, and that while the damages are fixed as of the time of the conversion, they may be fixed without reference to the time of any demand by the owner.

It can not be said the instructions give appellee damages that might have been avoided. The butter was continued

in storage after both parties knew a part of it had become damaged. It was a matter of contract. Appellant could not have terminated the bailment by taking advantage of its own wrong. If the instruction is open to objection in this respect it is not an objection appellant can make. Appellee left the butter in storage under a contract. The rights of the parties to the contract were not affected by the fact that the market price of butter rose. There is no reason for supposing that this rise disturbed the ratio previously existing between the value of good and damaged butter. The rise would naturally affect both. See *The Ship Compta*, 5 Saw. (U. S.) 137; *Gibbs* v. *Gildersleeve*, 26 U. C. Q. B. 471.

Upon the question of contributory negligence, appellant's counsel say that if appellee, at the time of the storage, knew exactly the circumstances under which the butter would be stored and knew that the result would be that the butter would be injured if so stored, there could be no recovery. This is true, but the record does not present such a case. The jury answered that appellee's officers visited the warehouse before making the contract of storage, but the jury also found, and there is evidence to support the finding, that appellee's officers were not acquainted with the method of storage used by appellant company.

It is also argued that the court erred in its instruction concerning the burden of proof. This instruction reads: "While I have already instructed you that the general rule is that the burden is on the plaintiff to prove the material allegations of his complaint, such rule in a case of bailment such as this is subject to the following modification, that is, where the bailor seeks to recover from a warehouseman for an injury to goods stored with such warehouseman, the bailor must prove negligence on the part of the warehouseman. But when the bailor shows that the goods were in good condition when delivered to the bailee, and that when returned they were in a damaged condition from any cause not inherent in the goods themselves, the plaintiff has made a *prima facie* case, and the burden then shifts to and is on

the warehouseman to account for the injury to the goods in some manner consistent with the exercise of ordinary care on his part, and if the warehouseman fails so to account for the injury he would be liable for such injury. But if the warehouseman does account for the injury to the goods in any manner consistent with the exercise of ordinary care on his part, then in order to recover, the bailor must prove positive negligence occasioning the loss."

It seems the exact question presented by this instruction has not been decided in this State. Among the decisions in other jurisdictions there is a lack of uniformity. The general rule in negligence cases is that the complaining party must aver and prove negligence, and in a line of decisions this rule has been applied to a suit on a bailment contract, holding that as the case is founded on negligence the burden of proving it affirmatively rests throughout on the plaintiff. But the better reason underlies the doctrine, and it is supported by the weight of modern authority, that when a plaintiff has shown that the bailee received the property in good condition and failed to return it or returned it damaged, he has made out a *prima facie* case of negligence. An essential part of every bailment contract is the obligation to deliver over the property at the termination of the bailment. The bailor must prove the contract, the delivery of the goods to the bailee, and their return in a damaged condition. When he has done this the inference is deducible that the bailee is at fault and must answer, and especially is this true if the loss could not ordinarily have occurred without negligence. His failure to return the goods as delivered to him is inconsistent with what he agreed to do. The property was in his possession, under his care and oversight and away from that of the bailor, who, in most cases, could not know under what circumstances it was damaged. Generally speaking the *onus probandi* is upon the party who has to free himself from liability by proof of facts the knowledge of which is peculiarly within his own power rather than of his adversary.

Strictly speaking perhaps there is no shifting of the burden of proof in such cases, though usually thus characterized. The plaintiff must make a *prima facie* case of negligence, and he has at all times the burden of proving facts to make this case. As is said in Hale on Bailments, p. 30: "The better opinion, supported by the weight of authority, holds that while the burden of proving negligence rests upon the plaintiff, and does not shift throughout the trial, the burden of proceeding does shift, and that when the plaintiff has shown that the bailee received the property in good condition, and failed to return it, or returned it badly injured, he has made out a *prima facie* case of negligence. 'When he has shown a situation which could not have been produced except by the operation of abnormal causes, the *onus* rests upon defendant to prove that the injury was caused without his fault.'" Hale on Bailments, pp. 30, 241; Schouler on Bailments, (3rd ed.) §23, n. 1; Story on Bailments (9th ed.), §410, n. 3, §411; Edwards on Bailments (2nd ed.), §§399, 400; Lawson on Bailments, §332; Jones' Law of Evidence, §184; *McDaniels* v. *Robinson,* 26 Vt. 316, 62 Am. Dec. 574; *Cumins* v. *Wood,* 44 Ill. 416, 92 Am. Dec. 189; *Boies* v. *Hartford, etc., R. Co.,* 37 Conn. 272, 9 Am. Rep. 347; *Collins* v. *Bennett,* 46 N. Y. 490; *Wintringham* v. *Hayes,* 144 N. Y. 1, 38 N. E. 999, 43 Am. St. 725; *Claflin* v. *Meyer,* 75 N. Y. 260, 31 Am. Rep. 467; *Safe Deposit Co.* v. *Pollock,* 85 Pa. St. 391, 27 Am. Rep. 660; *Vaughan* v. *Webster,* 5 Harr. (Del.) 256; *Funkhouser* v. *Wagoner,* 62 Ill. 59; *Higman* v. *Camody,* 112 Ala. 267, 20 South. 480, 57 Am. St. 33; *Ford* v. *Simmons,* 13 La. Ann. 397; *Haas* v. *Taylor,* 80 Ala. 459, 2 South. 633; *Goodfellow* v. *Meegan,* 32 Mo. 280; *Wiser* v. *Chesley,* 53 Mo. 547; *Thompson* v. *St. Louis, etc., Co.,* 59 Mo. App. 37; *Hildebrand* v. *Carrol* (Wis.), 82 N. W. 145; *Schmidt* v. *Blood,* 24 Am. Dec. 143, 150, note. *Parry* v. *Squair,* 79 Ill. App. 324. See, also, *Rowell* v. *Fuller,* 59 Vt. 688, 10 Atl. 853; *Malaney* v. *Taft,* 60 Vt.

571, 15 Atl. 326; *Leidy* v. *Quaker City, etc., Co.,* 180 Pa. St. 323, 36 Atl. 851.

In some of the above cases the action was against the bailee for failure to deliver over the goods, and in others for delivering them over in a damaged condition, but the rule above stated is applied to both classes of cases alike. We can not agree with appellant's counsel that the case of *Cox* v. *O'Riley,* 4 Ind. 368, 58 Am. Dec. 633, declares a different rule. In that case suit was brought against wharfingers for the loss of a box of goods, and it was held that it devolved upon the wharfingers to show the box out of their possession. This certainly means out of their possession in some manner consistent with due care on their part. There was no evidence that the box had passed from the defendant's possession, and the court held that fact must be shown by the wharfingers, and, when shown, the plaintiff, to recover, must show the loss occurred for want of due care on defendant's part. And so in the case at bar the jury were in effect told that if appellant did account for the injury to the property in any manner consistent with the exercise of ordinary care on its part then appellee, to recover, must show the damage occurred through negligence. The instruction in question stated the rule based upon the better reasoning, and supported by the weight of modern authority.

Judgment affirmed.