### GUARANTY TRUST COMPANY v. R. E. DILTZ.

Decided February 14, 1906.

**1.—Safe Deposit Company—Bailee for Hire—Liability for Loss.**

The evidence showed that there were only two keys to the deposit box, the plaintiff kept one and the company the other; neither key alone could open the box, to effect this, both keys must be used; a sum of money deposited by plaintiff in the box disappeared. Held, the defendant company was a bailee for hire, and all plaintiff had to show was the deposit in the box and the disappearance of the same therefrom, in order to make a prima facie case of liability.

**2.—Immaterial Negligence of Depositor.**

Upon the receipt given plaintiff for the rental of box were endorsed the following regulations: "Patrons must give immediate notice to the company of loss of keys. . . . Patrons will register every time they enter the vault and identify themselves to the satisfaction of the company. This rule is made for their protection as well as ours. . . . All authorizations to open boxes must be in writing, duly signed and witnessed, and the person presenting them must be identified." Plaintiff lost his key at some unknown time before discovery of loss of money. Held, not such negligence as would relieve company from liability for its own negligence.

Appeal from the County Court of El Paso. Tried below before Hon. Jos. U. Sweeney.

*Leigh Clark* and *W. M. Peticolas,* for appellant.—The court erred in submitting issues to the jury because, as a matter of law, the plaintiff was guilty of contributory negligence.

Plaintiff's allegations that defendant had abstracted and converted the money could only be supported by direct evidence; proof that plaintiff had put three hundred dollars ($300) in the box on September 10, and that on November 29, upon an examination of the box, the money was gone, might possibly be sufficient proof to give rise to a presumption of negligence on the part of defendant, but proof that defendant stole the money must have been by direct evidence, and no presumption would arise of its having abstracted and converted the money from the

facts proven. The undisputed testimony being that the box could only be opened by the use of two keys, it follows that, unless plaintiff had lost his key, the box could not have been opened, and, if plaintiff ever had any money therein, it could not have been removed; and it being the undisputed testimony that plaintiff did lose his key, he was, as a matter of law, guilty of contributory negligence that precludes his recovery.

The verdict of the jury was contrary to the evidence in this, that the plaintiff testified that the money was in the box on the 10th day of September; that he took his key and put it in a bureau drawer at his house; and the testimony further showed that the plaintiff's key was found just inside the defendant's door on November 29, and that it took two keys to open the box, and there was no testimony connecting defendant with bringing plaintiff's key to defendant's door.

The evidence was further insufficient to support the verdict in this, that there was no proof of what did become of the money, and the facts proven would not give rise to a presumption of want of ordinary care. Browne v. Johnson, 29 Texas, 43.

The court erred in his definition of contributory negligence, in which he told the jury that contributory negligence was negligence not only on the part of the one committing the injury, but also upon the part of him upon whom the injury is committed, and by which they both contribute thereto.

The court erred in its definition of ordinary care, having told the jury in its charge that ordinary care is that degree of care which may be reasonably expected of a person in the situation the parties held at the time of the injury or damage, if any.

The court erred in its main charge, wherein it told the jury that the burden of proof was upon the plaintiff, and when he has shown that he has been injured, substantially as alleged, that the same was caused by reason of the negligence of the defendant, the burden of the proof then shifts upon the defendant, and it devolves upon the defendant to show that it is not liable for the loss or damage, if any, by reason of the contributory negligence of the plaintiff.

Proof by plaintiff that he deposited money in defendant's boxes would raise a presumption of negligence on the part of defendant, but such presumption might be rebutted, and in this case was rebutted, by the testimony in the case. Claflin v. Meyer, 31 Am. Rep., 469.

JAMES, CHIEF JUSTICE.—This action was brought to recover of appellant the sum of $300, which appellee alleged he had deposited in one of appellant's safe deposit boxes in its vault, and which disappeared therefrom. Plaintiff testified that on January 7, 1904, he and J. C. Baker rented the box for one year. Upon the receipt given for the rental were indorsed the regulations, among which were: "Patrons must give immediate notice to the company of the loss of keys. . . . Patrons will register every time they enter the vault, and identify themselves to the satisfaction of the company. This rule is made for their protection as well as ours. . . . All authorizations to open boxes must be in writing, duly signed and witnessed, and the person presenting them must be identified." He testified that he had $300 in

the box on September 10, 1904, which was the last time he went to it before the time he found the money was gone, which was on November 29. There were only two keys to the box; one was retained by the company in its office and the other was given to this plaintiff, who kept it and used the box, exclusive of Baker, who, it was shown, was out of the country on and after September 10, when the money was in the box according to plaintiff's statement. Neither one of these keys was capable of opening the box; the one held by the company had first to be used in the lock, and then the one kept by plaintiff would open it. Plaintiff kept his key in a bureau drawer at his home, and on the morning of November 29 he wanted it, and found it gone. He immediately went to the company's office and reported the fact, and the young man then in charge of the office said: "I suppose we've got it here." Plaintiff asked: "How came you to get it in your possession?" He said: "The porter found it right on the inside of the screen there in the door entering the building from San Antonio Street. The porter picked it up lying there." Plaintiff asked: "How long has it been?" and he said ten days or two weeks (the young man, Hapgood, testified it was about five days). That he and the young man then went to the box. It was locked. The young man took his key and opened it half way, then plaintiff opened it with his key. The box was empty. "This young man said he did not know how it could occur; he says no chance of anyone getting in there. We talked a little while, and he says, 'You wait until Mr. Ordenstein comes.' He says, 'He will be down pretty soon.' I went out and returned in a short time, and the old gentleman was there. When I came back he began to upbraid me about losing my key. I told him I thought I was as careful as could be; I tried to take care of it; some way I lost it. I says, 'How come you in possession of it?' He never did answer me that question. I says, 'How long have you had the key?' He says, 'Four or five days.' The young man who first gave me the key says maybe I let some one to the box I shouldn't. I went into the vault and unlocked the box the second time, and he took the box out and shook it himself to see if anything in it. We came back to the main office below. The vault is upstairs. I says, 'What you going to do about it?' He says, 'We can't do anything.' He says, 'You lost the key.'"

We believe it is not necessary to detail the other evidence further, except that of Mr. Hapgood, to the effect that neither the plaintiff nor anyone else could have had access to the box without the assistance of the defendant, "or without the use of the keys exclusively under the control and in the possession of said defendant. I do not know whether it was my duty or the duty of the defendant to keep a record of anyone visiting the vault; but I do know that a record was always kept when the renter was unknown. Authorization to open said box should have been given in writing, but to my knowledge there was none ever given by either J. C. Baker or R. E. Diltz. By turning to the records we could have ascertained to whom the key belonged, but I never thought about the matter again until Mr. Diltz came in. I think it was four or five days after the key was found before Mr. Diltz came to the office. Many persons might have had access to the box without my knowledge."

It is contended by appellant that plaintiff was guilty of contributory negligence, as a matter of law, barring any recovery in this case, because he lost his key. Also, that there was no evidence of negligence on the part of the defendant. And complaint is made also of the charges. It is evident that the defendant owed the depositor some duty or degree of care in the premises. That duty has been held to be that of a bailee for hire. (Lockwood v. Manhattan Storage Warehouse Co., (Sup.), 50 N. Y. Supp., 974.) The case just cited was one in which the keys were held precisely as they were here, and although the box could not be opened by the company, and it can not be said that the contents of the box were accessible to it, yet it was held that the company was a bailee for hire with reference to what was in the box, and all plaintiff had to show was the deposit in the box and the disappearance of same therefrom in order to make a prima facie case of liability. We think the defendant was required at all times to exercise that degree of care which a prudent person would have exercised to prevent unauthorized third persons from having access to the box. That duty was not only imposed upon it by the nature of relation, but it was recognized by the regulations indorsed on the receipt given plaintiff. The undisputed testimony is that the box and the lock were intact, and that there were no other keys to the box. If the jury believed plaintiff's statement that he had this money in there, and that he did not take it out himself, then it must have been taken out by some other person through defendant's office, by means of the two keys. Such person could not have done this without the use of the key retained by defendant. The plaintiff did not get it if his testimony is credited. Baker did not, for it appears he was not in the State. This being so, the box must have been rifled after the loss of plaintiff's key, whenever that was—sometime after September 10. It may have been done before the key was found at the defendant's door, or after both the keys were in the office. It may have been done by some outsider or by some person having access to defendant's office.

There is necessarily a mystery connected with it, but there was enough before the jury to have warranted them in concluding that defendant failed to take such reasonable precautions as would have prevented an outsider from getting into the box, for there was evidence by Hapgood, the clerk, that even plaintiff, when he went there to report the loss of his key, was required to identify himself, by signing his name, and having it compared with his signature on file in the office, in order to get the use of the office key; also, that a record was kept of persons visiting the vault when the renter was unknown; also, that neither plaintiff nor Baker ever gave any written authorization to open the box; also—a matter which is manifest without any testimony—that no one could have access to the box without the use of defendant's key. There was also some evidence from which the jury could have inferred that the employes of defendant did not open the box, and, in solving the mystery surrounding this loss, they may have been driven to the conclusion that an outsider must have been allowed access to it, and that this was due to negligence of defendant's employes. There were facts and circumstances which would support such a conclusion. It made no difference if plaintiff lost the key, and it found its way into the hands of a third

person, so far as defendant's duties were concerned. The office key must have been used in opening this box. Any third person presenting himself with the other key, without a written authorization from plaintiff or Baker,—and no such writing was given—should have been refused the office key, according to the usage of the business. If the money was not taken by an outsider, then it must have been taken by some one after both keys were in defendant's office, and this 'must have been through the want of due precaution about its office, or failure to observe its duties against the occurrence of such an event. The testimony of plaintiff, if believed by the jury, cast upon defendant the burden of showing that it had used at least reasonable care in safeguarding plaintiff's property. (Lockwood v. Warehouse Co., supra; Cussen v. Southern Cal. Savings Bank (Cal.), 65 Pac. Rep., 1099, 85 Am. St. Rep., 221.) The explanation offered by defendant, if any, was not sufficient to show that it had exercised such care. This appears as a matter of law.

Under the charge given by the court the jury could not have found for plaintiff unless they credited his testimony. The verdict, therefore, makes it unmistakable that they believed him, whatever the other charges may have been. When they did this the verdict was the only one that could legally be rendered, because the evidence not only failed to show any reasonable explanation of the loss of the money consistent with ordinary care, but tended to show negligence. The fact that plaintiff lost his key, and that it may have gotten into the hands of a stranger, does not make any difference in the result for the reason that the evidence fails to show that precautions were taken which would have tended to prevent a stranger from having access to the box. The matter of contributory negligence, if any, did not bar plaintiff's recovery as a matter of law. Nor can we perceive how it would protect defendants, when, if it was negligent, as all the evidence goes to show, that negligence was the direct, immediate and responsible cause of the loss. However, the court submitted defendant's liability on that issue, and the jury found against it.

*Affirmed.*