SHERMAN ICE CO. v. KLEIN. (No. 1170.)

(Court of Civil Appeals of Texas. Amarillo. May 9, 1917.)

1. WAREHOUSEMEN ⊚═24(1)—COLD STORAGE—CARE REQUIRED.

One maintaining a cold storage for the purpose of preserving meat impliedly agrees to use ordinary care to maintain it in such condition that meat can be safely kept there for the length of time usual and proper in such cold storage.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. §§ 11, 48.]

2. WAREHOUSEMEN ⊚═34(7)—COLD STORAGE—ACTION FOR DAMAGES—SUFFICIENCY OF EVIDENCE.

Where it is alleged that meat kept in defendant's cold storage was molded, caused by dampness, the evidence need not specifically show the negligence producing dampness.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 79.]

3. WAREHOUSEMEN ⊚═34(9)—COLD STORAGE—ACTION FOR DAMAGES—SUFFICIENCY OF EVIDENCE.

Evidence held sufficient to submit to jury question of defendant's negligence in failing to keep dry his cold storage room, causing injury to plaintiff's meat kept therein.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 84.]

4. TRIAL ⊚═251(3)—INSTRUCTIONS—APPLICABILITY TO PLEADINGS.

Where cold storage warehouseman based his defense upon the negligent manner in which plaintiff hung and crowded his meat, claimed to have been injured, there was no error in submitting such defense to the jury as pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 590.]

5. TRIAL ⊚═251(1)—INSTRUCTIONS—AFFIRMATIVE DEFENSE NOT PLEADED.

The trial court is not warranted in charging upon an affirmative defense not specially pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587, 588, 594.]

6. APPEAL AND ERROR ⊚═1053(5)—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY INSTRUCTIONS.

Error in admitting evidence relating to items sought to be recovered was harmless, where the issue was not submitted to the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 977.]

7. APPEAL AND ERROR ⊚═1052(5)—HARMLESS ERROR—ADMISSION OF EVIDENCE—CURE BY VERDICT.

Error in admitting evidence relating to items sought to be recovered was harmless, where the jury did not allow recovery of such items.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4175.]

8. TRIAL ⊚═260(1)—REFUSAL OF REQUEST COVERED BY CHARGE.

It was not erroneous to refuse instructions sufficiently covered by the main charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651.]

Appeal from District Court, Grayson County; Dayton B. Steed, Judge.

---

Suit by W. S. Klein against the Sherman Ice Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, for appellant. Brame & Brame and Jones & Hassell, all of Sherman, for appellee.

HUFF, C. J. We adopt the statement of appellant as to part of the pleadings:

"Appellee filed this suit February 20, 1912, to recover of appellant damages in the sum of $730, alleging that the appellant owned an ice factory and conducted the business of furnishing refrigeration for meat, etc., and that appellee was conducting a meat market in the city of Sherman; that in conducting such business it is necessary or convenient to place fresh meat in cold storage, and that appellant, for hire, held itself out as furnishing such cold storage; that about February 1, 1911, appellee and appellant entered into a contract whereby the appellant, for $35 per month, agreed to furnish cold storage to appellee for one year from said date, and 'to keep the cold storage room and the meats to be placed therein by plaintiff at a sufficiently low temperature to prevent the meats from becoming tainted and from spoiling, and to preserve them fresh and pure, and also to receive and preserve such meats as plaintiff should see fit to place therein,' but that in violation of said contract, and on or about October 1, 1911, the defendant ceased to keep said cold storage room sufficiently cool to preserve plaintiff's meat therein; that said cold storage room was allowed by defendant to become, and did become, 'warm and damp, and remain in that condition,' and that the meat from seven head of plaintiff's cattle placed therein, worth $300, became tainted and spoiled and a total loss."

The appellee pleaded other issues which we do not consider essential in disposing of this case. The appellant pleaded general denial and specially as follows:

"Sixth. For special answer herein defendant says that it did enter into a contract with plaintiff to rent him a storeroom in its refrigerator plant, and to keep the same within a temperature that is ordinarily maintained in refrigerators where meat is stored, and that it has carried out its contract with plaintiff, and kept its cold storage plant in such condition. Defendant says that if the plaintiff sustained any loss of meat, or damage to meat, stored in said room the same was due to the careless and negligent way in which plaintiff packed and stored said meat in said room and the careless and negligent way in which said room was kept by plaintiff; that plaintiff stored too much in said room; that he packed the same so that pieces of warm meat overhung and touched each other, and permitted decayed flesh to accumulate on the floor of said room; and that if he sustained any injury, or damage, or loss, in the meat stored in said room, it was occasioned by his own negligent and careless acts as aforesaid."

The evidence shows that appellee called on the superintendent of appellant's plant about February 1, 1911, and asked for a cold storage room located in the southeast corner of the building, and he was told that it would cost him $35 per month for one year; that appellee took the room at that price, and that there was nothing else stated, except that the superintendent told him the room should be kept in proper shape for appellee. Mr. Arnolsti, the superintendent, the record shows, was dead at the time of the trial, and his testimony taken on a former trial of the case was reproduced, to the effect that he leased the room to appellee in the cold storage plant for $35 per month, $420 per year, which the appellee could use for the purpose of storing meat, and that he, in behalf of the Ice Company, agreed that it would keep the temperature of the room not above 40 degrees —the minimum temperature not lower than 32 degrees and not above 40. The evidence further shows appellant had been engaged for a number of years in operating a cold storage for hire in connection with its ice plant, and that the appellee, and his father before him, had been customers of the plant for many years. It is shown by the evidence that the refrigerator room should, for keeping meat, be kept at a certain temperature, and appellee testified that the temperature should run about 35° or 36° and be kept dry; that moisture would cause the meat to mold, sour, and spoil.

The first assignment is urged against the fourth paragraph of the court's charge which authorized a recovery for the meat lost by reason of being spoiled on account of improper refrigeration. In effect the court told the jury, if they found a contract by the terms of which appellant was to maintain the storage room, and to be maintained in such condition that meat placed therein would keep safely for the length of time that is usual to keep meat in cold storage, and that the room was not so kept by appellant at such temperature that meat could be safely kept, or if it failed to keep the room as to dryness in such manner as will keep meat safely, and that thereby appellee's meat was caused to spoil, and that such failure on the part of appellee was negligence, to find, etc. It is objected to the charge that it was not supported by the evidence, was on the weight of the evidence, not supported by the pleadings, was on implied duties, and should have been confined to the contract as made, and that it, and that part of it which imposed the duty of keeping the room in a state of dryness, was error, because there was nothing in the evidence to warrant the charge.

[1] It will be observed by the answer of appellant that it is alleged that appellant agreed to rent the room in its refrigerating plant and to keep a temperature ordinarily maintained in refrigerators where meat is stored. We believe the facts in this case, as well as the petition and answer, show that appellant maintained a cold storage business in connection with its ice plant, and that the appellee agreed to take a room in the cold storage for the purpose of preserving his meat and to keep it cool and sweet for the market. If his evidence is true, he contracted for the room for that purpose and there was nothing said as to how it should be kept, further than that it should be kept in shape. If the jury accepted this testimony, then under the circumstances as alleged and proved we believe, under the law

governing cold storage, that the implied agreement was, on the part of the appellant, to use ordinary care to maintain it in such condition that meat could be safely kept for the length of time usual and proper in cold storages. This appears to be the general rule, as we understand from the authorities, for such plants. Railway Co. v. Jackson & Co., 55 Tex. Civ. App. 407, 118 S. W. 853; Smith v. Diamond Ice & Storage Co., 65 Wash. 576, 118 Pac. 646, 38 L. R. A. (N. S.) 994, and notes; Allen v. Somers, 73 Conn. 355, 47 Atl. 653, 52 L. R. A. 106, and notes, 84 Am. St. Rep. 158; Union Compress Co. v. Nunnally, 67 Ark. 284, 54 S. W. 872; Elliott on Contracts, vol. 4, § 3100.

[2] It has been held that, where it is alleged that meat was molded, caused by dampness, the evidence need not specifically show the act of negligence producing dampness. Leidy v. Quaker City Cold Storage Co., 180 Pa. 323, 36 Atl. 851.

[3] However, we think in this case there is evidence showing that water stood on the floor of the room, causing it to become wet and damp. It is not conclusively shown by the evidence that it was the duty of the appellee to keep the room dry. We regard the evidence on this point as not entirely satisfactory, but we believe there was sufficient evidence to submit the issue to the jury. There is evidence to the effect that the frost which should be on the pipes used for cooling the room would melt and fall off on the floor, and cause it to become wet, and create dampness in the room, rendering the meat moldy. If the temperature had been kept at its proper degree, such would not have been the result. We therefore think the evidence as to the dryness of the room was sufficient to bring it under the allegations and the implied contract to keep the room at a proper temperature. The appellant was therefore required to maintain that required degree of refrigeration and temperature which an ordinarily prudent person would have exercised to preserve the meat so received into the cold storage. That duty was imposed upon it by the relation of the parties, and which was evidently also required by the contract in renting the room. Guaranty Trust Co. v. Diltz, 42 Tex. Civ. App. 26, 91 S. W. 596. The first assignment will be overruled.

The second assignment presents as error the fifth paragraph of the court's charge:

"Also, if you believe from the evidence that plaintiff's meat spoiled, but you further believe from the evidence that the same was caused to spoil by the plaintiff's placing more fresh meat in said room than an ordinarily prudent person would have placed therein under the same or similar circumstances, or if you believe from the evidence that plaintiff was guilty of 'contributory negligence,' as that term has been defined to you, in placing meat in said room that had the animal heat in same, and that such animal heat of the meat so placed caused said meat to spoil, then, in either of these events, you will find for the defendant."

And the third assignment is based upon the fourth specially requested charge, which is as follows:

"If you believe from the evidence that the injury to plaintiff's meat which was placed on storage in said room was caused by him or his employés placing too much meat in the room, or too much warm meat in the room, or placing said meat in the room too closely, or keeping the meat on storage too long in said room, or by the unsanitary condition of the room (if you find it was unsanitary), you will allow plaintiff nothing for any injury to said meat."

It is contended by the appellant that, if the appellee placed too much meat in the room while it had the animal heat in it, etc., the appellant would not be liable, whether there was any negligence shown or not, and that it was not required to show negligence in order to defeat a recovery on that ground. Whether this is true or not, we have concluded there was no reversible error in giving the charge, or in refusing the requested instruction.

[4] The appellant, by its answer, based its defense upon the wrong of the appellee in the manner in which he placed his meat in the room. Having elected to plead the matter as a wrong or tort on the part of the appellee, and rely thereon as a defense, we think that there would be no error on the part of the court in following his defense and submitting it to the jury as pleaded. He may have had the right to have presented this defense as a breach of an implied contract to properly place the meat in the room for refrigeration; but, having alleged it as a wrong on the part of appellee, it occurs to us it is in no condition to urge that the court was in error in submitting it as one of negligence. To have given the charge as requested would have submitted an issue not pleaded as a defense. The charge of the court had given both the affirmative and negative of the question whether appellant should keep the room at such temperature and condition as to dryness as was usual and customary for the preservation of the meat, and whether it did so. The jury in effect found that under the circumstances of the case the appellant impliedly agreed so to do and that it failed. Having found that fact, the only affirmative defense presented by the answer was whether the appellee negligently hung or crowded his meat, or put it in while it was too warm, or whether it was too much at one time. The jury found that it did not, on what appears to be sufficient evidence.

[5] We do not think the court would have been warranted to charge upon an affirmative defense not pleaded; that is, that appellee, in violation of his contract did those things. The finding by the jury that appellant failed in proper refrigeration, and thereby caused the damage, negatives that the injury was caused by improperly placing the meat in the room by appellee. The only affirmative defense pleaded was sub-

mitted to the jury as pleaded. We do not understand that a trial court is called upon to present a defense affirmatively not specially pleaded. The issues as made by the pleadings in this case were fully submitted by the court to the jury.

[6, 7] The fourth, fifth, and seventh assignments will be overruled, for the reason, if the evidence to which objections were urged, and the charge of which complaint is made, were objectionable upon the grounds urged, the record shows that they related to items sought to be recovered, one of which was not submitted to the jury, and the other the verdict clearly evidences that the jury did not allow. The record, therefore, shows, if the action of the court was erroneous, which, as we view the cause, it is not necessary here to decide, no injury resulted to appellant therefrom. The damages sought to be recovered for the spoiled meat by reason of improper refrigeration was alleged in the petition to be $300. The verdict is for that sum. The uncontroverted evidence shows that the value of the meat so lost was $315. The jury, it is thereby shown, did not allow interest on this amount, or for any other item to which the above assigned errors relate. They evidently were not improperly influenced by improper evidence to render the verdict they did, or by an improper charge upon other items sought to be recovered by the pleading.

[8] The sixth assignment is overruled, for the reason that we believe the issue here sought in the specially requested instruction was sufficiently covered by the court's main charge, and especially by the fifth paragraph thereof.

The case will be affirmed.