## WALLACE et al. v. CENTRAL STATE BANK OF DALLAS. (No. 9340.)

(Court of Civil Appeals of Texas. Dallas. March 7, 1925. Rehearing Denied April 4, 1925.)

1. **Banks and banking** ⊂⊃179 — **Issue as to whether securities were in safety deposit box at time defendant delivered key to bank's official held under evidence for jury.**

Where defendant alleged that he turned over to bank's official key to his safety deposit box, stating it contained securities sufficient to secure his loan from bank, question as to whether box at that time contained securities in issue *held* under evidence one for jury.

2. **Banks and banking** ⊂⊃112 — **Negligence of vice president of bank, if any, held negligence of bank.**

Where borrower of money from bank turned over key to his safety deposit box to bank's vice president, stating that it contained securities sufficient to secure loan, negligence of vice president, if any, in connection with box and securities, *held* negligence of bank.

3. **Banks and banking** ⊂⊃179—**Bank in charge of securities in safety deposit box of borrower owed duty to prevent access to box by unauthorized person.**

Where borrower of money from bank turned over to it key to his safety deposit box, stating it contained securities sufficient to secure his loan, bank became possessor of securities as bailee for hire, and was charged with duty of prudent person to prevent unauthorized person from having access to box.

4. **Banks and banking** ⊂⊃179—**Evidence held not to sustain finding that negligence of bank was not proximate cause of loss of securities.**

Where borrower of money from bank turned over to it key to his safety deposit box, stating that it contained securities sufficient to secure loan, evidence *held* not to sustain finding

that bank's negligence was not proximate cause of loss of securities.

**5. Banks and banking ⟷179—Evidence held insufficient for jury on question of contributory negligence of renter of safety deposit box in loss of securities therefrom.**

Where borrower of money from bank turned over to it key to his safety deposit box; stating it contained securities sufficient to secure loan, evidence *held* insufficient for jury on issue of borrower's contributory negligence in loss of securities.

**6. Banks and banking ⟷179—Evidence held insufficient to sustain finding of contributory negligence of renter in loss of securities from safety deposit box.**

Where borrower of money from bank turned over to it key to his safety deposit box, stating it contained securities sufficient to secure loan, evidence *held* insufficient to sustain finding of jury that his contributory negligence proximately contributed to loss of securities.

**7. Trial ⟷356(1)—Trial court prohibited from making finding, where party requested that issue be submitted to jury.**

Under Rev. St. art. 1985, trial court is prohibited from making finding, where party requested that special issue be submitted to jury.

**8. Appeal and error ⟷1177(8) — Judgment cannot be entered on appeal on unauthorized finding of trial court.**

Where trial court was prohibited by Rev. St. art. 1985, from finding that securities were in defendant's safety deposit box at time key thereof was turned over to official of plaintiff bank, since defendant requested submission of such issue to jury, the appellate court cannot, on such unauthorized finding, enter judgment thereon, but must remand for retrial.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by the Central State Bank of Dallas against W. F. Wallace and another. Judgment for the plaintiff, and defendants appeal. Reversed and remanded.

J. N. Townsend and R. L. Stennis, both of Dallas, for appellants.

Martin B. Winfrey, of Dallas, for appellee.

JONES, C. J. In a suit in the district court of Dallas county, appellee, Central State Bank of Dallas, recovered a judgment against appellant W. F. Wallace as maker, and appellant S. W. Sibley as indorser, of a promissory note in the sum of $4,554.11, with interest from date of the judgment at 8 per cent. per annum, said sum being the balance due on a promissory note executed by Wallace and indorsed by Sibley in the principal sum of $5,000. That the amount recovered represented the balance due on the note is not questioned on this appeal.

An appeal is duly perfected by appellants from this judgment because there was not allowed a counterclaim of $3,250, the aggregate value of certain Liberty bonds and savings stamps that appellant Wallace claimed were placed in a safety deposit box rented from appellee, and taken as collateral security on a former note in a larger sum, for which the note forming the basis of this suit had been executed as a renewal of the balance due on said former note, and that said Liberty bonds and savings stamps, used as collateral security, had disappeared from the bank through its negligence and were thereby lost to appellant Wallace. This claim of appellant Wallace was made the basis of a cross-action against the bank by proper pleading. Appellee answered the claim in such cross-action, in which it specifically denied that there was any collateral security accepted by it to secure said note; that appellant Wallace had rented a safety box in said bank, and that if the securities alleged to have been lost were ever deposited by Wallace in the said box and disappeared therefrom same was due to no negligence on the part of appellee or any of its employés; and further that, if said securities were lost, their loss was directly due to the negligence of Wallace.

The case was tried before a jury and submitted on special issues. So much of the charge of the court and the findings of the jury as affect the issues herein involved, are as follows:

"Was the Central State Bank, the plaintiff herein, guilty of negligence, as that term has heretofore been defined to you, in the handling of the safety deposit box of the defendant Wallace?" Answer: "Yes."

"Was the negligence, if any, of the Central State Bank the direct and proximate cause, as the term 'proximate cause' had hereinabove been defined to you, of the loss complained of?" Answer: "No."

"Was the defendant Wallace himself guilty of contributory negligence, as the term 'contributory negligence' has heretofore been defined to you, and did such contributory negligence, if any you find, contribute to bring about the loss complained of?" Answer: "Yes."

The court also gave approved definitions of negligence, contributory negligence, and proximate cause. In connection with special issue No. 5 the court gave the two following charges:

"You are instructed that when the plaintiff bank, through any of its officers, received the key to the lock box of the defendant Wallace with authority to take and use the bonds and stamps in controversy as security on his note (if it received such key and had such authority), the said bank thereby obligated itself to use ordinary care to protect and preserve said bonds and stamps, and to redeliver same to the defendant Wallace."

"You are instructed that if you find and believe from the evidence that the defendant Wallace himself was guilty of some negligent act of

omission that contributed or tended to contribute in any way to bring about the loss complained of, then, even though you may find and believe from the evidence that the plaintiff was guilty of negligence as alleged in the cross-action of the defendants, the defendants cannot recover herein, and your verdict should be for the plaintiff."

The facts developed at the trial in reference to this counterclaim are as follows: In 1920 appellant Wallace secured a loan of approximately $20,000 from appellee by the execution of his personal note therefor and the indorsement of said note by appellant Sibley. Wallace used the proceeds of said note, it seems, in the purchase of stock in a bank in the city of Shreveport, state of Louisiana. After the purchase of said stock, he became an active vice president in said bank, and later became its president. The negotiations with appellee that culminated in this loan, and later in its renewals, except the last renewal, were had with L. H. Squires, an active vice president of appellee. In December, 1920, Wallace had a conversation with Squires with reference to this loan. This conversation was in the bank, and Squires informed this appellant, either "that the bank would have to have collateral security for said note," or, "that the bank might have to require collateral security on said note." Said appellant was leaving that afternoon for Shreveport and stated to Squires that in his lock box were bank stock, Liberty bonds and war savings stamps amply sufficient to secure said note, and delivered to Squires his key to his said lock box. As to whether the securities in said lock box were then to be considered as collateral security, or whether Squires was simply given authority to open said lock box and take therefrom sufficient collateral if it was determined that said collateral should be put up, the evidence is not clear. Squires was dead at the time of the trial of this case, and the entire evidence in respect to these securities is given by appellant Wallace and is fairly represented by the brief quotations given above. It is not deemed necessary for the disposition of this case to determine the exact status of those securities at the time this key was delivered to Squires. Wallace, that afternoon, went to Shreveport and did not return to Dallas until some months thereafter, when, on a visit to the bank, he secured the key from Squires, and, on entering his lock box, reported that the Liberty bonds and war savings stamps were not in the box. Wallace alone testified that the missing securities were in his safety box at the time he delivered the key to Squires. There is some evidence tending to show that one of the Liberty bonds had been cashed some time previous to the date that Wallace secured this safety box from appellee.

Appellant Sibley testified that between the time at which Squires was delivered the said key and the time at which Wallace examined his safety box, he had occasion to go into a safety box that he had rented from appellee; that previous to this time he had delivered the key to his safety box to Squires in order that appellee might hold the contents of the safety box as collateral security for an individual indebtedness he owed appellee; that he requested Squires to give him the key to his box, and that, on receipt of the key, he went to the lady employé in charge of the safety box and told her that he wanted to get in that box; that she took the master key, and they opened the box whose number corresponded with the key he secured from Squires; that he went into the contents of this box and at once discovered that it was not his box, but Wallace's, and that he immediately closed the box and informed the young lady that they had gone into the wrong box; that he delivered the key to Squires, and then secured the proper key and went into his own box; that he did not take from Wallace's box the securities in question.

Mrs. C. Brown was the employé in charge of the safety boxes for appellee at the time Wallace delivered his key to Squires and during the entire time in question in this case. There were a number of these safety boxes rented by appellee to such tenants. There was a master key held by the bank that was absolutely necessary before any one could have access to one of these boxes, and, under the rules and regulations of the bank, the person desiring to enter a box, if unknown, must identify himself as being the tenant of the box or present a written order signed by the tenant of the box, and this signature must be identified as the tenant's signature before access could be had to a box; that she had in her charge the master key that would assist in unlocking all the safety boxes, and without the use of which no safety box could be unlocked; that when she left the bank in the afternoon she delivered this key to another lady employé, which employé had had charge of the safety boxes before her connection with same; that when she came to the bank in the morning she would find this master key on her desk, but did not know the custody of the key after she delivered it to said employé in the evening until she again took custody of it the next morning. The lady employé to whom the key was surrendered in the afternoon was unable, on account of sickness, to attend court and testify at the trial. Mrs. Brown's testimony on the occasion of Sibley's going into the Wallace box differs materially from that of Sibley. Her version is that Mr. Sibley came to her with the key to the Wallace box and stated that it was all right for him to go into the box, and asked that she open same. The witness communicated with Squires, who stated it was all right to permit Sibley to go into Wallace's box, and

that she thereupon opened the box, using the master key and the key given Sibley, and, according to custom, left the vault where the boxes were situated, and that Mr. Sibley had in his possession the Wallace box for a period of about 30 minutes. This witness does not give any statement as to Sibley's mistaking the Wallace box for his box. These boxes were located in different places in the vault. This witness also testified that Sibley was the only one for whom the Wallace box was opened by her during the period of time elapsing before Wallace discovered the securities were missing from his box.

Wallace testified that he authorized no one to go into the box except Squires, and he only for the purpose above stated, and that he did not authorize Sibley to go into his safety box; that there was deposited in his safety box stock in the said Shreveport bank that belonged to Sibley, and if Sibley went into his box, he, Wallace, could not complain. He also testified that on the occasion of his missing the said securities he reported the same to Squires; that Squires said he had not taken them out of the box and had not attached them to the note as collateral, and that the bank would do what it could to try to locate the securities, and that the bank would see that he, Wallace, would not lose anything by reason of the disappearance of the said securities.

Renewals and payments were made on this note from time to time until it was reduced to the sum of $5,000. On the occasion of the last renewal of this $5,000 note, J. W. Hoopes had become connected with appellee, and at once made demands on Wallace in reference to this note, which had become past due. At an interview between them, Wallace said he did not want to renew the note until satisfaction was given him in reference to his lost securities. This was the first time Hoopes had heard that it was claimed any securities were lost, and he told Wallace he would at once look into it, but that they could not carry the past-due paper, and, as a result of this conference, the note was renewed in a nonnegotiable form and, as such, indorsed by Sibley. The disagreement as to the responsibility of these securities resulted in the filing of this suit by appellee and the cross-action by appellant Wallace.

At the conclusion of the evidence, appellants requested peremptory instructions in their favor as to an offset against the note in the amount of the value of said Liberty bonds and war savings stamps. This requested instruction was refused, and appellants have duly assigned error on this action of the court.

Appellants' theory of this case was that when appellant Wallace testified that the securities were in the safety box at the time he delivered his key to his said box to Squires as an officer of the bank, and further testified that during the time that said officer of the bank was in possession of the key, the said securities were removed from the box and lost to him, he made a prima facie case on his cross-action that could only be overcome, either by the production by appellee of said securities or by an explanation of the loss that would relieve the bank from any negligence in reference to said loss. In conformity to this theory, objections were made to the court's charge in submitting the special issues above set out, and in refusing to give certain requested instructions, and this theory is urged by appropriate propositions of law, together with the further proposition that the finding of the jury that the negligence of the bank was not the proximate cause of the loss of the securities, and the further finding that Wallace's contributory negligence was the proximate cause of their loss, is each unsupported by the evidence, and that he was entitled to peremptory instructions in his favor on the prima facie case he made.

On the other hand, appellee's theory is that the finding of the jury to the effect that appellee's negligence was not the proximate cause, and the finding of the jury that Wallace's negligence was the proximate cause, of the loss of the securities, is each supported by evidence; and further, that regardless of whether there was evidence to support the finding of the jury as to the contributory negligence of Wallace, the judgment in favor of appellee was correctly entered because of the finding of the jury that appellee's negligence was not the proximate cause of the said loss.

[1] This court cannot adopt either the theory of appellant or appellee. The evidence, as given above, clearly raises an issue of fact necessary for submission to the jury on whether or not the missing securities were in the safety deposit box at the time the officer of the bank was delivered the key to said box. The fact that appellant Wallace, directly interested in this being true, alone testified to the fact that the securities were in the box at such time, is sufficient within itself to make an issue for a jury to determine. In addition to this, however, the testimony tending to show that one of the Liberty bonds was not in said safety box at said time gives an added reason for the submission of this issue to the jury, so there was no error in the court's refusal to give the requested peremptory instruction on said appellant's cross-action, and the assignments of error on this issue are overruled.

[2, 3] Whether it shall be considered that the missing securities were delivered to appellee as collateral security when Wallace surrendered his key to Squires, the vice president of the bank, or whether it shall be considered that the key was held by Squires with the option to place the missing securities as collateral on the note, the duty of appellee is the same. In either instance, ap-

pellee was in the possession of the securities as bailee for hire, and charged with the duty to exercise the degree of care that a prudent person would have exercised to prevent an unauthorized person from having access to the said box. In whatever capacity Squires held the key, it was for the benefit of appellee and not as agent for Wallace. When this officer of appellee spoke to Wallace in reference to the putting up of collateral as additional security on his note, he was performing a duty under his official connection with appellee and exercising an authority and power given him. It was, in fact, appellee speaking through its said officer, and it was, in fact, to appellee the key was surrendered, and it was appellee who was holding the same for its benefit through and by means of its active vice president in charge of all negotiations concerning this loan. The negligence, if any, of Squires, was therefore the negligence of appellee.

There is no evidence from which a suggestion can come that this safety box was opened, or could have been opened, in any way other than by the use of the key in the possession of appellee through its said officer Squires, together with the use of the master key, likewise in appellee's possession. If the securities were in the box at the time the key was delivered to Squires, the conclusion is inevitable that some one, through the negligence of appellee, was given access to the said box, and that such access resulted in the loss of the securities. If the contention of appellee be allowed that Squires was the agent of Wallace and held possession of the said key as such agent, still no access could be had to the box without the assistance of an officer or employé of the appellee.

When appellant Wallace testified that said securities were in the box when the key was delivered to Squires and were not in the box when he examined its contents for the first time after the said delivery of the key, and further, that he had given no one authority to go into the said box, a clear case on the cross-action was made out—a case that rested primarily on the basis that the securities were in the deposit box and in possession of the bank during the time the key to such box was held by Squires. If the jury should believe the testimony of Wallace on this phase of his cross-action, then said appellant would be entitled to recover the value of his securities, unless appellee had met this condition by evidence explaining in some degree the disappearance of the said securities. Guaranty Trust Co. v. Diltz, 42 Tex. Civ. App. 26, 91 S. W. 596.

[4-6] The record is silent as to any evidence that would tend to exonerate appellee from negligence in its failure to produce the securities when they were demanded. In brief, it is shown that this safety deposit box could only be opened by the use of the master key, always in the possession of appellee, and the use of Wallace's key, then held by an officer of appellee for its benefit; that Sibley was permitted, through the direct act of an officer of appellee, to have access at one time to this safety deposit box. This access was contrary to the rules and regulations established by appellee for the safety of the deposits in said box, and on which rules and regulations and their faithful observance by appellee each tenant of a box has a right to place reliance. It is also shown that this master key necessary to open any deposit box was found each morning on the desk of the lady employé in charge of these deposit boxes. If it should be urged that an issue was made by the evidence of Sibley's going into the box as to whether the loss of the securities might be traceable thereto, the unanswerable reply is that this condition resulted solely from the negligence of appellee. Likewise, if it should be urged that, during the time the said master key was out of the possession of any employé of the bank during the time it lay upon the desk of an employé, use was made of it by an unauthorized person to gain access to said box, the unanswerable reply is that this condition was entirely brought about by the negligence of appellee. We therefore hold that there was no evidence to sustain the finding of the jury in answer to special issue No. 4 to the effect that the negligence of appellee was not the proximate cause of the loss of the said securities. We also hold that there was neither evidence to authorize the submission to the jury of the contributory negligence of Wallace, nor evidence to sustain the finding of the jury that there was such contributory negligence on his part that proximately resulted in the loss of the securities.

[7, 8] This case was tried before a jury and submitted upon special issues. In the submission of special issues in which the question was involved, the court assumed that the said securities were in the safety box at the time the key to same was delivered to Squires. As we have seen, this was a controverted issue, and should have been submitted to the jury for its determination. Appellants requested this issue to be submitted to the jury by appropriate requested instruction. This instruction the court refused to give. After the verdict had been returned and the jury discharged, but before judgment had been entered in this case, at the request of appellants the court made a finding that the securities were in said lock box at said time. This finding the court was prohibited from making by article 1985, Revised Statutes, because appellants had requested that the issue be submitted to the jury; for which reason this court cannot, on the unauthorized finding of the trial court, enter judgment here in accordance with such finding, and the case must be reversed and re-

manded for another trial not inconsistent with this opinion.

Reversed and remanded.